[No. C024963. Third Dist. Oct. 5, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE TABIOS, JR., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV.

2

**COUNSEL**

Mark L. Christiansen and Michael S. Sideman, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Margaret Venturi and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HULL, J.**—A jury convicted defendants George Tabios, Jr., and Felix Lucero, Jr., of one count of second degree murder (Pen. Code, §§ 187, 189 [further section references are to the Penal Code unless otherwise designated]) and found defendants used a rifle in the commission of this offense (§ 12022.5, subd. (a)). The jury also convicted each defendant of two counts of attempted murder (§§ 664/187), but found these offenses were not willful, deliberate, and premeditated. The trial court sentenced defendant Lucero to an aggregate prison term of 15 years to life plus a consecutive 3-year sentence for the firearm use. Defendant Tabios was sentenced to an aggregate prison term of 15 years to life plus a consecutive 4-year sentence for firearm use.

Defendants' cases have been consolidated on appeal. They assert: (1) the court made several errors relating to the second degree felony-murder theory advanced by the prosecution; (2) the court erroneously permitted evidence that defendant Tabios had been judicially prohibited from possessing firearms; (3) statements of defendant Tabios were admitted in violation of

*Bruton* v. *United States* (1968) 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] and *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]; and (4) the court committed numerous instructional errors. None of these claims has merit, and we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A brief recitation of the facts will suffice for purposes of this appeal. Defendant George Tabios, Jr. (hereinafter referred to as defendant Tabios or George), is a teenager and, at the time of this incident, lived with his family in Stockton. Family members had previously been harassed, threatened, and physically attacked by a local gang known as Li'l Unity. In November 1994, the family's house was riddled with more than 20 shots from a drive-by shooting. The house was shot at on a subsequent occasion as well.

Sometime after midnight on March 26, 1995, several teenagers in the Tabios family gathered outside the house to socialize with friends. George remained inside with his friend, defendant Felix Lucero. A car drove slowly down the street, passed the house, and then turned around. Several of the teenagers were sure the car was occupied by members of Li'l Unity intent on shooting at the Tabios house. One of George's cousins ran inside, yelling to George and Lucero that Li'l Unity was "rolling up." George and Lucero ran out of the house, armed with rifles pulled from under George's bed.

The car started toward the Tabios house but then backed up when one of the occupants shouted a warning upon seeing the guns. Three shots were fired at the car, two by Tabios and one by Lucero. One of the bullets fired by Tabios killed one of the car's passengers, David Ware.

Defendants hid their guns in a truck parked in the Tabios backyard.

The occupants of the car were not in fact members of Li'l Unity. They were on the Tabios's block to visit a friend and were having trouble finding the correct address.

Defendants were arrested and charged with Ware's murder and two counts of the attempted murder of the other occupants of the car. Tabios was prosecuted as the person who actually shot Ware, and Lucero was prosecuted as an aider and abettor.

The prosecutor offered alternative theories of liability, including premeditated first degree murder, second degree murder based on an inherently dangerous act, and second degree felony murder. Under the latter theory, the

prosecutor contended the underlying offense, shooting into an occupied car (§ 246), could properly be characterized as an inherently dangerous felony.

Defendants asserted they fired their guns because they feared a drive-by shooting, and meant only to scare the car away. Their arguments centered on a claim of imperfect self-defense, and they urged a verdict of manslaughter. Alternatively, Lucero also argued that he should be acquitted because he had not aided or abetted Tabios.

The jury convicted both defendants of one count of second degree murder and two counts of attempted murder, and found defendants personally used a rifle in the commission of the murder.

The court sentenced both defendants to prison terms of fifteen years to life for the murder, and added an additional three-year sentence for defendant Lucero and an additional four-year sentence for defendant Tabios for the firearm enhancements.

This appeal followed.

DISCUSSION

I

*Issues Related to Second Degree Felony-murder Doctrine*

Defendants raise several issues related to the second degree felony-murder theory offered by the prosecution.[1] Specifically, they assert (1) they were improperly deprived of an opportunity to assert a claim of imperfect self-defense to this theory of liability; (2) a violation of section 246 is not an inherently dangerous felony giving rise to felony-murder liability; and (3) the underlying felony and the murder "merge," precluding conviction for second degree felony murder. None of these claims has merit.

A. *Imperfect Self-defense*

Defendants contend the trial court erred in precluding them from asserting a claim of imperfect self-defense to the prosecution's second degree felony-murder theory of liability. Defendants argue that they fired at the automobile because they believed its occupants were about to shoot at

---

[1]The jury was instructed on three theories for second degree murder: a killing with express malice but without premeditation and deliberation, a killing resulting from an unlawful act dangerous to human life, and second degree felony murder. It is unknown which theory the jury relied upon in reaching its verdicts.

the Tabios house. They urge that this claim serves as a valid defense to second degree felony murder. We do not agree.

As the California Supreme Court has explained: "Murder is the unlawful killing of a human being . . . with malice aforethought. [Citation.] Second degree murder is the unlawful killing of a human being with malice, but without the additional elements (i.e., willfulness, premeditation, and deliberation) that would support a conviction of first degree murder. [Citations.]

"Malice may be express or implied. [Citation.] It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' [Citation.] It is implied 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' [Citation.] We have held that implied malice has both a physical and a mental component, the physical component being the performance of ' "an act, the natural consequences of which are dangerous to life," ' and the mental component being the requirement that the defendant ' "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." ' [Citations.]

"The felony-murder rule imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to human life. 'Under well-settled principles of criminal liability a person who kills—whether or not he is engaged in an independent felony at the time—is guilty of murder *if he acts with malice aforethought.* The felony-murder doctrine, whose ostensible purpose is to deter those engaged in felonies from killing negligently or accidentally operates to posit the existence of that crucial mental state—and thereby to render irrelevant evidence of actual malice or the lack thereof—when the killer is engaged in a felony whose inherent danger to human life renders logical an imputation of malice on the part of all who commit it.' [Citations.]

"The felony-murder rule applies to both first and second degree murder. Application of the first degree felony-murder rule is invoked by the perpetration of one of the felonies enumerated in section 189. . . . [T]he felonies that [can] support a conviction of second degree murder, based upon a felony-murder theory, [have been restricted] to those felonies that are 'inherently dangerous to human life.' We have explained that the justification for the imputation of implied malice under these circumstances is that, 'when society has declared certain inherently dangerous conduct to be felonious, a defendant should not be allowed to excuse himself by saying he was unaware of the danger to life . . . .' " (*People* v. *Hansen* (1994) 9

Cal.4th 300, 307-308 [36 Cal.Rptr.2d 609, 885 P.2d 1022], italics in original.)

Thus, the felony-murder doctrine "imputes the requisite malice for a murder conviction," or, put another way, "posit[s] the existence of that crucial mental state." (*People* v. *Hansen, supra,* 9 Cal.4th at p. 308.)

This conclusion is well established. "The felony-murder rule generally acts as a substitute for the mental state ordinarily required for the offense of murder. . . . Ordinarily, when a defendant commits an unintentional killing, a murder conviction requires a showing that he acted with implied malice. [Citation.] With the felony-murder rule, however, such malice need not be shown." (*People* v. *Patterson* (1989) 49 Cal.3d 615, 626 [262 Cal.Rptr. 195, 778 P.2d 549], italics omitted.) The *Patterson* court reasoned that the second degree felony-murder doctrine acts as a substitute for implied malice, and eliminates the need for the prosecution to establish the mental component required for the offense of murder. (*Ibid.*)

Similarly, in *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697], the court noted that in a felony-murder prosecution, the defendant is not permitted to offer any proof at all that he acted without malice. (*Id.* at p. 474.) The court explained: "In Wigmore's words, the issue of malice is therefore 'wholly immaterial for the purpose of the proponent's case' when the charge is felony murder. In that event . . . as a matter of law malice is not an element of felony murder." (*Id.* at p. 475.) As the court concluded, " '. . . malice aforethought is not an element of murder under the felony-murder doctrine.' " (*Ibid.*)

▮ Regarding the doctrine of imperfect self-defense, ". . . when the trier of fact finds that a defendant killed another person because the defendant actually, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is *deemed to have acted without malice* and thus can be convicted of no crime greater than voluntary manslaughter." (*In re Christian S.* (1994) 7 Cal.4th 768, 771 [30 Cal.Rptr.2d 33, 872 P.2d 574], original italics omitted and italics added.) Because malice is irrelevant in first and second degree felony-murder prosecutions, a claim of imperfect self-defense, offered to negate malice, is likewise irrelevant.

In *People* v. *Loustaunau* (1986) 181 Cal.App.3d 163 [226 Cal.Rptr. 216], the court recognized that a claim of imperfect self-defense is inapplicable in a felony-murder case. In that case, the defendant contended imperfect self-defense should reduce felony murder to manslaughter. The court rejected

this assertion, noting ". . . an honest but unreasonable belief in self-defense negates malice aforethought. [Citation.] In felony murder, on the other hand, malice aforethought is not required." (*Id.* at p. 170.)

In a similar case, *People* v. *Anderson* (1991) 233 Cal.App.3d 1646 [285 Cal.Rptr. 523], defendant was charged with first degree felony murder and the trial court refused to instruct on the defense of imperfect duress. The appellate court affirmed, noting: "Even if the defense of imperfect duress could negate malice aforethought, malice aforethought is not an element of either felony murder or robbery. Hence, a defense tending to negate malice aforethought is simply irrelevant and provides no defense at all to felony murder." (*Id.* at p. 1666.)

In sum, defendants' claim of imperfect self-defense is irrelevant to the charge of second degree felony murder. Consequently, defendants' claim that they were wrongfully deprived of an opportunity to advance this defense necessarily fails.[2]

B. *Shooting Into an Occupied Vehicle as an Inherently Dangerous Felony*

Defendants contend a violation of section 246 that involves shooting into an occupied vehicle does not constitute an inherently dangerous felony for purposes of the second degree felony-murder rule.[3] We categorically reject such a claim.

In *People* v. *Hansen, supra,* 9 Cal.4th at pages 309-310, the California Supreme Court concluded a violation of section 246 that involves shooting at

---

[2]Furthermore, we note that, by returning guilty verdicts on the charges of attempted murder, the jury necessarily found defendants acted with malice. The jury was instructed: "Every person who attempts to murder another human being is guilty of a violation of Sections 664 and 187 of the Penal Code. [¶] Murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove the crime of Attempted Murder, each of the following elements must be proved: [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." In convicting defendants of these charges, the jury found defendants acted with express malice, and necessarily would have resolved the imperfect self-defense claim against defendants even if the jury had been allowed to consider it in relation to the felony murder charge.

[3]A violation of section 246 can be predicated on one of several acts. The statute provides: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar . . . , or inhabited camper . . . is guilty of a felony. . . . [¶] As used in this section, 'inhabited' means currently being used for dwelling purposes, whether occupied or not."

an inhabited dwelling is an inherently dangerous felony. The court reasoned: "The discharge of a firearm at an inhabited dwelling house—by definition, a dwelling 'currently being used for dwelling purposes, whether occupied or not' [citation]—is a felony whose commission inherently involves a danger to human life. An inhabited dwelling house is one in which persons reside [citation] and where occupants 'are generally in or around the premises.' [Citation.] In firing a gun at such a structure, there always will exist a significant likelihood that an occupant may be present. Although it is true that a defendant may be guilty of this felony even if, at the time of the shooting, the residents of the inhabited dwelling happen to be absent [citation], the offense nonetheless is one that, viewed in the abstract—as shooting at a structure that currently is used for dwelling purposes—poses a great risk or 'high probability' of death . . . . The nature of the other acts proscribed by section 246 reinforces the conclusion that the Legislature viewed the offense of discharging a firearm at an inhabited dwelling as posing a risk of death *comparable to that involved in shooting at an occupied* building or *motor vehicle.*" (*Id.* at p. 310, some original italics omitted and italics added.)

As the Supreme Court implicitly recognized, shooting at an occupied motor vehicle involves a clear danger to human life. Defendants contend shots may be fired at portions of a car, such as the wheels, in a manner that presents no risk to the car's occupants. Unlike defendants, we are unwilling to ascribe such a high level of marksmanship to someone who fires a gun at an occupied vehicle. Shots fired at an occupied vehicle pose a self-evident risk to human life. In fact, given the far smaller spaces involved, this danger is arguably even greater than that posed by random firing into an inhabited dwelling, where occupants might not even be present.

Moreover, the *Hansen* court also observed that application of the felony-murder rule to a homicide resulting from a violation of section 246 furthers the deterrence principles behind the felony-murder doctrine. Noting that firearm deaths have become "an alarmingly common occurrence in our society" (9 Cal.4th at p. 311), the court concluded: "By providing notice to persons inclined to willfully discharge a firearm at an inhabited dwelling—even to those individuals who would do so merely to frighten or intimidate the occupants, or to 'leave their calling card'—that such persons will be guilty of murder should their conduct result in the all-too-likely fatal injury of another, the felony-murder rule may serve to deter this type of reprehensible conduct, which has created a climate of fear for significant numbers of Californians . . . ." (*Ibid.*) The same rationale applies here.

In sum, the Supreme Court had no hesitancy in concluding that a violation of section 246 constitutes an inherently dangerous felony when the violation

involves shooting at an inhabited dwelling house. We have no hesitancy in concluding the same result applies with at least equal force when the violation involves firing into an occupied vehicle.

## C. *Merger Doctrine*

Citing *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323], defendants contend a violation of section 246 "merges" with the resulting homicide, thereby precluding application of the felony-murder rule. This precise claim was rejected in *People* v. *Hansen*, supra, 9 Cal.4th at pages 311-316. In that case, the Supreme Court concluded a violation of section 246 involving discharging a firearm at an inhabited dwelling did not merge with the resulting homicide and instead supported a conviction of second degree felony murder. (9 Cal.4th at p. 316.) The court explained "that with respect to certain inherently dangerous felonies, their use as the predicate felony supporting application of the felony-murder rule will not elevate all felonious assaults to murder or otherwise subvert the legislative intent." (*Id.* at p. 315.)

The court continued: "Most homicides do not result from violations of section 246, and thus, unlike the situation in [*Ireland*], application of the felony-murder doctrine in the present context will not have the effect of 'preclud[ing] the jury from considering the issue of malice aforethought . . . [in] the great majority of all homicides.' [Citation.] Similarly, application of the felony-murder doctrine in the case before us would not frustrate the Legislature's deliberate calibration of punishment for assaultive conduct resulting in death, based upon the presence or absence of malice aforethought. . . . [T]his is not a situation in which the Legislature has demanded a showing of actual malice (apart from the statutory requirement that the firearm be discharged 'maliciously and willfully') in order to support a second degree murder conviction. Indeed, . . . application of the felony-murder rule, when a violation of section 246 results in the death of a person, clearly is consistent with the traditionally recognized purpose of the second degree felony-murder doctrine—namely the deterrence of negligent or accidental killings that occur in the course of the commission of dangerous felonies." (*People* v. *Hansen, supra,* 9 Cal.4th at p. 315.)

The same reasoning applies when the violation of section 246 involves the discharge of a firearm into an occupied vehicle, rather than into an inhabited dwelling. *Hansen* thus controls the present situation. There was no merger.

## II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgments are affirmed.

Sims, Acting P. J., and Davis, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 20, 1999.

---

*See footnote, *ante*, page 1.