[No. A082187. First Dist., Div. Four. Feb. 17, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES CLEM, Defendant and Appellant.

348

## COUNSEL

Mark R. Verneulen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and René A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANLON, P. J.**—In this appeal we hold that grossly negligent discharge of a firearm in violation of Penal Code section 246.3 is an offense "inherently dangerous to human life" which will support a conviction of second degree felony murder.

### I.

On May 18, 1997, appellant James Clem fired a rifle out of the window of his second story apartment, and the bullet struck and killed a man standing in the street below. Appellant testified that he had been assaulted by the victim earlier that day, and only intended to frighten the victim when he fired the fatal shot. Appellant was convicted by a jury of second degree murder and other offenses, and was sentenced to a total of 24 years to life in state prison. The jury was instructed that it could consider several theories of second degree murder, including second degree felony murder based on a violation of Penal Code section 246.3.[1] The sole issue on appeal is whether this felony-murder instruction was proper.

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## II.

■ "The felony-murder rule imputes the requisite malice for a murder conviction to those who commit a homicide during the perpetration of a felony inherently dangerous to human life." (*People v. Hansen* (1994) 9 Cal.4th 300, 308 [36 Cal.Rptr.2d 609, 885 P.2d 1022]; see also *People v. Satchell* (1971) 6 Cal.3d 28, 43 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383], overruled on another point in *People v. Flood* (1998) 18 Cal.4th 470 [76 Cal.Rptr.2d 180, 957 P.2d 869].) The rule is designed "to deter those engaged in felonies from killing negligently or accidentally" (*People v. Satchell, supra,* at p. 34), and to discourage acts "in which danger to human life is inherent" (*id.* at p. 43). "If the felony is not inherently dangerous it is highly improbable that the potential felon will be deterred; he will not anticipate that any injury or death might arise solely from the fact that he will commit the felony." (*People v. Williams* (1965) 63 Cal.2d 452, 457-458, fn. 4 [47 Cal.Rptr. 7, 406 P.2d 647].)

"[A]n 'inherently dangerous felony' is an offense carrying 'a high probability' that death will result." (*People v. Patterson* (1989) 49 Cal.3d 615, 627 [262 Cal.Rptr. 195, 778 P.2d 549].) " 'High probability' " in this context does not mean a " 'greater than 50 percent' " chance. (*People v. James* (1998) 62 Cal.App.4th 244, 269 [74 Cal.Rptr.2d 7]; see *People v. Hansen, supra,* 9 Cal.4th at p. 329 (conc. & dis. opn. of Kennard, J.) [death need not result in a majority or great percentage of instances].) However, it must appear that the offense "by its very nature . . . cannot be committed without creating a substantial risk that someone will be killed." (*People v. Burroughs* (1984) 35 Cal.3d 824, 833 [201 Cal.Rptr. 319, 678 P.2d 894]; see *People v. Hansen, supra,* 9 Cal.4th at p. 308 [citing *Patterson* and *Burroughs*]; *People v. James, supra,* at p. 259 [noting *Hansen*'s treatment of *Patterson* and *Burroughs*'s definitions as "equivalent and interchangeable"].) This determination is based on "the elements of the felony in the abstract, not the particular 'facts' of the case." (*People v. Williams, supra,* 63 Cal.2d at p. 458, fn. 5.) The issue has been addressed numerous times. (See 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, §§ 496-497, pp. 561-563, and cases cited.)

Felonies which have been deemed inherently dangerous for purposes of the second degree felony-murder rule include: shooting at an inhabited dwelling (§ 246; *People v. Hansen, supra,* 9 Cal.4th at p. 304); shooting at an occupied vehicle (§ 246; *People v. Tabios* (1998) 67 Cal.App.4th 1, 9-11 [78 Cal.Rptr.2d 753]); manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a); *People v. James, supra,* 62 Cal.App.4th at p. 271); reckless driving to elude a peace officer (Veh. Code, § 2800.2; *People v.*

*Johnson* (1993) 15 Cal.App.4th 169, 173-174 [18 Cal.Rptr.2d 650]); and reckless possession of a bomb (§ 12303.2; *People v. Morse* (1992) 2 Cal.App.4th 620, 645-646 [3 Cal.Rptr.2d 343]).

Felonies which have been deemed not to be inherently dangerous for this purpose include: practice of medicine without a license (Bus. & Prof. Code, § 2053; *People v. Burroughs, supra*, 35 Cal.3d at pp. 828-833); false imprisonment (§§ 236, 237; *People v. Henderson* (1977) 19 Cal.3d 86, 93-96 [137 Cal.Rptr. 1, 560 P.2d 1180], overruled on another point in *People v. Flood*, *supra*, 18 Cal.4th 470); possession of a firearm by a felon (§ 12021; *People v. Satchell, supra*, 6 Cal.3d at pp. 40-41); extortion (§§ 518-520; *People v. Smith* (1998) 62 Cal.App.4th 1233, 1235 [72 Cal.Rptr.2d 918]); furnishing PCP (Health & Saf. Code, § 11379.5; *People v. Taylor* (1992) 6 Cal.App.4th 1084, 1099-1101 [8 Cal.Rptr.2d 439]); and child abuse (§ 273a, subd. (a); *People v. Caffero* (1989) 207 Cal.App.3d 678, 682-684 [255 Cal.Rptr. 22]).

## III.

■ Section 246.3 provides: "Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison."[2]

Section 246.3 was enacted to deter "the dangerous practice of discharging firearms into the air during festive occasions." (*People v. Leslie, supra,* 47 Cal.App.4th at p. 201; see *People v. Alonzo* (1993) 13 Cal.App.4th 535, 539 [16 Cal.Rptr.2d 656].) The elements of the offense are: "(1) the defendant unlawfully discharged a firearm; (2) the defendant did so intentionally; (3) the defendant did so in a grossly negligent manner which could result in the injury or death of a person." (*People v. Alonzo, supra,* at p. 538; see also *In*

---

[2]That this offense is a "wobbler" which could be sentenced as a misdemeanor (*People v. Leslie* (1996) 47 Cal.App.4th 198, 201 [54 Cal.Rptr.2d 545]) has no bearing on the felony-murder issue (*People v. Satchell, supra*, 6 Cal.3d at p. 35, fn. 13). It has been stated that second degree felony-murder analysis involves the application of a "bipartite standard," where a reviewing court "look[s] first to the primary element of the offense at issue, then to the 'factors elevating the offense to a felony,' to determine whether the felony, taken in the abstract, is inherently dangerous to human life." (*People v. Burroughs, supra*, 35 Cal.3d at p. 830, citing *People v. Henderson, supra*, 19 Cal.3d at p. 94; cf. *People v. Patterson, supra*, 49 Cal.3d at p. 624 [statute may have no "primary element"].) This "bipartite" approach is subsumed in the rule that where, as here, the statute "proscribe[s] an essentially single form of conduct" (*People v. Patterson, supra*, at p. 623), the statute as a whole must be examined to determine whether it describes an inherently dangerous felony (*ibid.*). Thus, we will simply take into account all of the elements of section 246.3 without breaking the discussion down into a "bipartite" analysis.

*re Jerry R.* (1994) 29 Cal.App.4th 1432, 1439, 1440 [35 Cal.Rptr.2d 155] [weapon must be fired intentionally; willful discharge and gross negligence are discrete elements of the offense].)

Willful discharge of a firearm with gross negligence in violation of section 246.3 poses a sufficient danger to human life to support a conviction for second degree felony murder. "It is universally accepted that a loaded gun is so dangerous an instrument that a high degree of caution and circumspection is required of the person handling it." (*People v. Tophia* (1959) 167 Cal.App.2d 39, 45 [334 P.2d 133].) "From the time of the common law, firearms were recognized as a dangerous instrumentality because of their great potential harm and in the interest of the preservation of human life and safety a high degree of care was demanded of those who use them." (*People v. Freudenberg* (1953) 121 Cal.App.2d 564, 580 [263 P.2d 875].) "The tragic death of innocent and often random victims, both young and old, as the result of the discharge of firearms has become an alarmingly common occurrence in our society—a phenomenon of enormous concern to the public." (*People v. Hansen, supra,* 9 Cal.4th at p. 311.) The offense described in section 246.3 was outlawed precisely because of the lethal danger it posed. (See *People v. Alonzo, supra,* 13 Cal.App.4th at p. 540 [§ 246.3 addressed " 'reckless and senseless' " acts which had " 'resulted in the death of at least 2 persons, . . . in the Los Angeles area alone' "].) Potential elevation of the offense to felony murder "may serve to deter this type of reprehensible conduct." (*People v. Hansen, supra,* at p. 311.)

Appellant argues that a section 246.3 offense is distinguishable from the section 246 offenses found inherently dangerous in *Hansen* (shooting at an inhabited dwelling) and *Tabios* (shooting at an occupied vehicle) because, he asserts, section 246.3 "neither requires nor presumes the presence of people in harm's way." (See *People v. Hansen, supra,* 9 Cal.4th at p. 310 ["there always will exist a significant likelihood than an occupant may be present" in or around an inhabited dwelling]; see also *People v. Morse, supra,* 2 Cal.App.4th at p. 646 [bomb statute contemplated "proximity of people"].) Appellant posits violations of section 246.3 by "target practice or even random shooting in a remote area" where people are not around, and submits that the requisite danger to human life would not exist in those situations. (See *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 114 [13 Cal.Rptr.2d 864, 840 P.2d 969] (conc. opn. of Mosk, J.) [posing a hypothetical § 246.3 violation where "in a remote part of a rural county, a hunter, for no apparent reason, fired a bullet into the air at a 45-degree angle, causing a human death on the ground some distance away"].)

Contrary to appellant's claim, section 246.3 presupposes that there are people in harm's way. Since the offense involves gross negligence

" 'which could result in injury or death to a person,' " it must appear that the defendant's act "actually had the potential for culminating in personal injury or death." (*People v. Alonzo, supra,* 13 Cal.App.4th at p. 539). "Gross negligence" means that the defendant's act must be " ' "such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life, or, in other words, a disregard of human life or an indifference to consequences." ' " (*Id.* at pp. 539-540, quoting *People v. Penny* (1955) 44 Cal.2d 861, 879 [285 P.2d 926].) "The facts must be such that the fatal consequence of the negligent act could reasonably have been foreseen." (*People v. Penny, supra,* at p. 880; see also *People v. Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279] [a reasonable person in the defendant's position would have been aware of the risk involved].) ▮ Thus, section 246.3 by its terms presumes that there are reasonable grounds to suspect that people will be endangered. If there are isolated places in this populous state where the willful discharge of a firearm posed no reasonably foreseeable threat to human life, then that act in those places would not violate section 246.3.

Appellant contends that our conclusion is inconsistent with *People v. Burroughs, supra,* 35 Cal.3d 824. The offense in *Burroughs* was unlicensed medical practice "under circumstances or conditions which cause or create a risk of great bodily harm, serious physical or mental illness, or death." (*Id.* at p. 828, fn. 1.) The court noted that, to resolve the felony-murder issue, it was necessary "to view the statutory definition of the offense as a whole, taking into account even nonhazardous ways of violating the provisions of the law which do not necessarily pose a threat to human life." (*Id.* at p. 830.) In the court's view, the statute's reference to " 'death' as a separate risk, and in the disjunctive, strongly suggest[ed] the Legislature perceived that one may violate the proscription against the felonious practice of medicine without a license and yet not necessarily endanger human life." (*Ibid.*) This legislative perception was confirmed by an analysis of the various ways in which the statute could be violated. (*Id.* at pp. 831-832.) Since the risks of great bodily harm and mental illness were not inherently life threatening, the offense did not qualify as a predicate for felony murder. (*Ibid.*) *Burroughs* was followed in *People v. Caffero, supra,* 207 Cal.App.3d at page 683, where the child abuse statute at issue likewise referred in the disjunctive to " 'great bodily harm or death.' "

Appellant argues that *Burroughs* is controlling because section 246.3 also refers to the separate risks of "injury or death." However, *Burroughs* and *Caffero* are distinguishable because the statutes in those cases were "implicated in a wide range of circumstances." (*People v. Caffero, supra,* 207

Cal.App.3d at p. 683.) Those statutes could be violated by many different acts which did "not all involve conduct which [was] life endangering." (*People v. Henderson, supra,* 19 Cal.3d at pp. 93-94 [discussing the various means of committing felony false imprisonment]; see also *People v. Satchell, supra,* 6 Cal.3d at p. 40 [citing "a vast number of situations wherein it would be grossly illogical to impute malice"]; *People v. Smith, supra,* 62 Cal.App.4th at p. 1237 [most of the illegal conduct was "clearly not life threatening"].)

In contrast, there is only one way to violate section 246.3—by willful discharge of a firearm. The result of that act may be injury or death, but the *risk* will *always* be that someone might die. "[I]mminent deadly consequences [are] inherent in the act" (*People v. Taylor, supra,* 6 Cal.App.4th at p. 1099), even if the bullet fortuitously falls so as to injure and not kill (cf. *People v. Tabios, supra,* 67 Cal.App.4th at p. 10 [assessment of inherent danger does not turn on the defendant's marksmanship]). The offense "carries with it as a likely consequence the possibility of massive physical harm," and is therefore inherently dangerous even though the statute refers to lesser harm. (*People v. Johnson, supra,* 15 Cal.App.4th at p. 174 [reckless flight from officer deemed inherently dangerous despite statute's reference to disregard for safety of persons "or property"].)

Appellant asks us to be mindful that the felony-murder rule is "disfavor[ed]" and " ' "deserves no extension beyond its required application." ' " (*People v. Burroughs, supra,* 35 Cal.3d at pp. 824, 829.) We recognize that "it is appropriate . . . to attempt to minimize the disparity between the legislatively created and the judicially recognized categories of second degree murder" (*People v. Patterson, supra,* 49 Cal.3d at p. 626, fn. 8; see *People v. Burroughs, supra,* 35 Cal.3d at p. 829, fn. 3 [second degree felony-murder rule is a "creature of judicial invention"]), and that the Legislature has distinguished gross negligence from implied malice for certain penal purposes (see §§ 191.5, 192). We are cognizant that gross negligence generally involves a lesser degree of risk, and lesser culpability, than implied malice. (*People v. Watson, supra,* 30 Cal.3d at p. 296.) However, a killer who violates section 246.3 "is engaged in a felony whose inherent danger to human life renders logical an imputation of malice on the part of all who commit it." (*People v. Satchell, supra,* 6 Cal.3d at p. 43; see generally *People v. Patterson, supra,* at p. 626 [second degree felony-murder rule acts as a substitute for the mental state ordinarily required for murder].) We note also that the element of willfulness in section 246.3 distinguishes cases of manslaughter where guns go off accidentally. (See, e.g., *People v. Carmen* (1951) 36 Cal.2d 768, 776 [228 P.2d 281].)

We are not extending the second degree felony-murder rule to cover violations of section 246.3. This offense "by its very nature . . . cannot be

committed without creating a substantial risk that someone will be killed." (*People v. Burroughs, supra,* 35 Cal.3d at p. 833.) The offense thus falls squarely within the established boundaries of the rule.

## IV.

The judgment is affirmed.

Poché, J., and Sepulveda, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2000.