[No. C066501. Third Dist. Oct. 24, 2011.]

In re FELIX LUCERO, JR., on Habeas Corpus.

**40**

---

COUNSEL

Michael Satris, under appointment by the Court of Appeal, for Petitioner Felix Lucero, Jr.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Respondent The People.

OPINION

**BUTZ, J.**—In 1995, petitioner Felix Lucero, Jr., and his friend George Tabios, Jr., shot at an occupied vehicle, killing one of the occupants. They were convicted by a jury of one count of second degree murder and two counts of attempted murder, with special enhancements for firearm use. We affirmed both convictions in *People v. Tabios* (1998) 67 Cal.App.4th 1 [78 Cal.Rptr.2d 753] (*Tabios*).[1] In doing so, we rejected the argument that the jury was erroneously instructed on the felony-murder rule based upon the predicate felony of willful shooting at an occupied vehicle. (Pen. Code, § 246.)[2] (*Tabios, supra*, at pp. 9–11.) Our conclusion was mandated by the California Supreme Court case of *People v. Hansen* (1994) 9 Cal.4th 300 [36 Cal.Rptr.2d 609, 885 P.2d 1022] (*Hansen*). (*Tabios*, 67 Cal.App.4th at pp. 9–10, citing *Hansen*, at pp. 309–310.)

In 2009, the California Supreme Court decided *People v. Chun* (2009) 45 Cal.4th 1172 [91 Cal.Rptr.3d 106, 203 P.3d 425] (*Chun*), announcing that the crime of shooting at an occupied vehicle now "merges" with the homicide, such that it can no longer provide a predicate for application of the felony-murder rule. In doing so, *Chun* expressly overruled *Hansen, supra*, 9 Cal.4th 300 and disapproved *Tabios, supra*, 67 Cal.App.4th 1. (*Chun*, at p. 1199.)

Lucero filed a petition for habeas corpus in the trial court asking that the judgment be vacated. He asserted that, under *Chun*, instructing the jury on felony murder was both erroneous and prejudicial under the facts of his case. When the trial court denied the petition, Lucero renewed his petition in this court, seeking the same relief. We issued an order to show cause.

Reaching the merits of the habeas corpus petition, we shall conclude that Lucero's petition was not untimely and that *Chun* should be given retroactive application. However, we also determine that, based on the trial record, any error in instructing the jury on the felony-murder rule was not prejudicial. We shall therefore deny the petition.

## FACTUAL BACKGROUND

The following facts are taken verbatim from our opinion in *Tabios*. "Defendant George Tabios, Jr. (hereinafter referred to as defendant Tabios or George), is a teenager and, at the time of this incident, lived with his family in Stockton. Family members had previously been harassed, threatened, and

---

[1] We have obtained and take judicial notice of the record in *Tabios, supra*, 67 Cal.App.4th 1.

[2] Undesignated statutory references are to the Penal Code.

physically attacked by a local gang known as Li'l Unity. In November 1994, the family's house was riddled with more than 20 shots from a drive-by shooting. The house was shot at on a subsequent occasion as well.

"Sometime after midnight on March 26, 1995, several teenagers in the Tabios family gathered outside the house to socialize with friends. George remained inside with his friend, defendant Felix Lucero. A car drove slowly down the street, passed the house, and then turned around. Several of the teenagers were sure the car was occupied by members of Li'l Unity intent on shooting at the Tabios house. One of George's cousins ran inside, yelling to George and Lucero that Li'l Unity was 'rolling up.' George and Lucero ran out of the house, armed with rifles pulled from under George's bed.

"The car started toward the Tabios house but then backed up when one of the occupants shouted a warning upon seeing the guns. Three shots were fired at the car, two by Tabios and one by Lucero. One of the bullets fired by Tabios killed one of the car's passengers, David Ware.

"Defendants hid their guns in a truck parked in the Tabios backyard.

"The occupants of the car were not in fact members of Li'l Unity. They were on the Tabios's block to visit a friend and were having trouble finding the correct address.

"Defendants were arrested and charged with Ware's murder and two counts of the attempted murder of the other occupants of the car. Tabios was prosecuted as the person who actually shot Ware, and Lucero was prosecuted as an aider and abettor.

"The prosecutor offered alternative theories of liability, including premeditated first degree murder, second degree murder based on an inherently dangerous act, and second degree felony murder. Under the latter theory, the prosecutor contended the underlying offense, shooting into an occupied car (§ 246), could properly be characterized as an inherently dangerous felony.

"Defendants asserted they fired their guns because they feared a drive-by shooting, and meant only to scare the car away. Their arguments centered on a claim of imperfect self-defense,[3] and they urged a verdict of manslaughter. Alternatively, Lucero also argued that he should be acquitted because he had not aided or abetted Tabios.

---

[3] "Imperfect self-defense" is shorthand for an actual but unreasonable belief in the need to defend oneself or others from imminent peril to life or great bodily injury. (*In re Christian S.* (1994) 7 Cal.4th 768, 773 [30 Cal.Rptr.2d 33, 872 P.2d 574].)

"The jury convicted both defendants of one count of second degree murder and two counts of attempted murder, and found defendants personally used a rifle in the commission of the murder." (*Tabios, supra*, 67 Cal.App.4th at pp. 5–6.)

## PROCEDURAL BACKGROUND

Lucero was sentenced to a term of 15 years to life on the murder conviction plus three years for the firearm use enhancement. Punishment on the two attempted murder counts was stayed pursuant to section 654.

In a partially published opinion filed on October 5, 1998, this court affirmed the judgments of both Lucero and Tabios. (*Tabios, supra*, 64 Cal.App.4th at pp. 1, 12.) The California Supreme Court denied review on January 20, 1999 (S074546).

On March 30, 2009, *Chun* was decided. (*Chun, supra*, 45 Cal.4th at pp. 1172, 1216.) Rehearing was denied on April 29, 2009 (S157601).

On December 10, 2009, Lucero filed a petition for writ of habeas corpus in this court (*In re Lucero* (C063623)), based upon asserted error in the denial of his parole. That petition was denied on December 30, 2009, and the California Supreme Court denied review on March 10, 2010 (S179456).

On April 23, 2010, Lucero filed another pro se petition for writ of habeas corpus in San Joaquin County Superior Court, based on the effect of the *Chun* decision. That petition was denied on October 18, 2010. In his written order denying the petition, the judge acknowledged that *Chun* had expressly disapproved of *Tabios, supra*, 67 Cal.App.4th 1, but also noted that after *Chun* was decided, Lucero had filed a habeas corpus petition, which was summarily denied by this court and the state Supreme Court. Citing the principle that when a writ of habeas corpus has once been denied, a new application based on the same ground should also be denied unless there has been a change in the facts or the law (see *In re Lynch* (1972) 8 Cal.3d 410, 439, fn. 26 [105 Cal.Rptr. 217, 503 P.2d 921]), the judge denied the petition.[4]

On October 29, 2010, 11 days after the trial court denied his second petition, Lucero filed the current habeas corpus petition in this court. We issued an order to show cause and appointed counsel for Lucero.

---

[4] The trial court was wrong. Lucero's first petition, the one that was denied in both this court and the California Supreme Court, was *not* based on the effect of the *Chun* decision, but rather on error in the denial of his parole. His second petition was therefore not based on the same ground.

## DISCUSSION

### I. Timeliness

■ One seeking relief by way of habeas corpus must do so "without substantial delay." (*In re Harris* (1993) 5 Cal.4th 813, 828 [21 Cal.Rptr.2d 373, 855 P.2d 391].) "It has long been required that a petitioner explain and justify any significant delay in seeking habeas corpus relief. '[I]t is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question.' [Citation.] . . . [S]uch explanation [is] 'particularly necessary' where a petitioner has made prior attacks on the validity of the judgment without raising the issues. [Citation.] The burden is one placed even on indigent petitioners appearing in propria persona, and is not met by an assertion of counsel that he or she did not represent the petitioner earlier." (*In re Clark* (1993) 5 Cal.4th 750, 765 [21 Cal.Rptr.2d 509, 855 P.2d 729], fn. omitted.)

Relying on these principles, the People argue the petition should be denied because Lucero waited too long to file it. They point out that, even though *Chun* was decided on March 30, 2009, neither the first habeas corpus petition Lucero filed in this court nor his application for relief in the California Supreme Court mentioned *Chun*. The People assert that Lucero has advanced no satisfactory reason why he "delayed some 18 months" after *Chun* was decided before filing a habeas corpus petition that addressed *Chun*.

■ We disagree that the delay was unreasonable. Substantial delay is measured from the time petitioner knew or should have known of the information supporting the legal basis of the claim. (*In re Robbins* (1998) 18 Cal.4th 770, 780 [77 Cal.Rptr.2d 153, 959 P.2d 311].)

Although *Chun* was decided on March 30, 2009, a petition for rehearing in *Chun* was not denied until April 29, 2009. The decision did not become effective for state court purposes, however, until the time for petitioning for a writ of certiorari in the United States Supreme Court had expired (*Linkletter v. Walker* (1965) 381 U.S. 618, 622, fn. 5 [14 L.Ed.2d 601, 604, fn. 5, 85 S.Ct. 1731], overruled in part on different grounds in *Griffith v. Kentucky* (1987) 479 U.S. 314, 322–323 [93 L.Ed.2d 649, 658, 107 S.Ct. 708]; *People v. Vieira* (2005) 35 Cal.4th 264, 306 [25 Cal.Rptr.3d 337, 106 P.3d 990]), which in this case was June 28, 2009 (28 U.S.C. § 2101(b)).

The present petition was filed in the trial court on April 23, 2010, some 10 months after *Chun* became final for all purposes. In light of Lucero's explanation that he is a layperson with limited access to a prison law library that does not receive newly published cases for several months, and the

importance of the issue he now raises to a case that resulted in a life sentence, we do not consider the delay so unreasonable as to warrant denial of the petition on the ground of tardiness.

## II. Retroactivity of *Chun*

The People also claim that the petition should be denied because *Chun* should not be applied retroactively to final judgments such as this one. Lucero, on the other hand, argues retroactivity is warranted.

In *People v. Guerra* (1984) 37 Cal.3d 385 [208 Cal.Rptr. 162, 690 P.2d 635] (*Guerra*), the state Supreme Court reaffirmed that a decision establishes a "new rule" when it "(1) *explicitly overrules a precedent of this court* [citation], or (2) disapproves a practice impliedly sanctioned by prior decisions of this court [citation], or (3) disapproves a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities." (*Guerra*, at p. 401, italics added.) Since the Supreme Court in *Chun* expressly overruled its prior precedent in *Hansen* (*Chun, supra*, 45 Cal.4th at pp. 1198–1199), it established such a new rule.

Both sides agree that the standard articulated in *In re Johnson* (1970) 3 Cal.3d 404 [90 Cal.Rptr. 569, 475 P.2d 841] (*Johnson*) governs the determination whether to apply a new rule retroactively to a final judgment such as this one. Under this test, the retroactivity of a new rule "is to be determined by ' "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." ' " (*Id.* at p. 410.) More succinctly, under *Johnson*, "the more directly the new rule in question serves to preclude the conviction of innocent persons, the more likely it is that the rule will be afforded retrospective application. Further, if the rule relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent, it will apply retroactively regardless of the reliance of prosecutors on former law, and regardless of the burden which retroactivity will place upon the judicial system." (*Johnson*, at p. 413.) "[T]he most consistent application of this principle [of applying new rules retroactively] has been in cases in which the primary purpose of the new rule is to promote reliable determinations of guilt or innocence." (*Guerra, supra*, 37 Cal.3d at p. 402.)

In light of these precepts, we conclude that *Chun* should apply retroactively to Lucero's case. Lucero's jury was given an instruction—that a homicide committed in the course of willfully discharging a firearm at an occupied vehicle (§ 246) can serve as a predicate for murder—that *Chun* has now ruled was erroneous. Thus, under the instructions given, if the jury found

the killing was committed in the course of a willful firearm discharge violation, it could have reached a murder verdict without addressing the issue of malice. This had a substantial impact on Lucero's claim of imperfect self-defense for, as we noted in *Tabios*, a claim of imperfect self-defense, offered to negate malice, is irrelevant where the prosecution's theory is felony murder. (*Tabios, supra,* 67 Cal.App.4th at p. 8.) Under *Chun*'s new rule, the jurors should not have been given a felony-murder instruction, but instead should have been directed to convict Lucero of murder *only* if they made an express finding of malice.

The rule announced in *Chun* thus has a close relationship to the issue of Lucero's guilt on the murder charge, for if there was a reasonable chance a correctly instructed jury would have found him guilty only of voluntary manslaughter (based on imperfect self-defense) absent a felony-murder instruction, the reliability of the murder verdict must be questioned.

The difference between a murder conviction and a conviction of voluntary manslaughter is significant. Lucero received a prison term of 15 years to life on his conviction of second degree murder. Had he been convicted of voluntary manslaughter he would have received a determinate sentence of three, six, or 11 years. (§§ 190, subd. (a), 193, subd. (a).)

Because application of the new rule announced in *Chun* directly affects inmates such as Lucero, who might have been acquitted of murder *but for* application of the felony-murder rule, it impacts the reliability of his murder conviction. (*Guerra, supra,* 37 Cal.3d at p. 402.) Accordingly, we conclude that *Chun* should be given retrospective effect in this proceeding.

### III. Prejudice

Relief by way of writ of habeas corpus is available when the defendant could not be expected to obtain relief through the normal appellate process. (See *In re Harris, supra,* 5 Cal.4th at pp. 828–829.) Furthermore, a petitioner may raise an issue in habeas corpus proceedings if an intervening change in the law has occurred, even if the issue was raised on direct appeal. (*Id.* at p. 841.) This is the situation here.

We therefore address the issue of whether the giving of the felony-murder instruction (correct at the time but now error under *Chun*) resulted in prejudice. The People argue there was no prejudice because, on similar facts, the *Chun* court found that the instruction was not prejudicial.

According to this line of reasoning, Lucero stands in the same shoes as the *Chun* defendant.

In *Chun*, the occupants of a car, owned by a family that included a notorious gang member, were stopped in the left-turn lane at a traffic light, when another car drove up alongside. Multiple shots were fired through the window of the stationary car, killing one of its occupants. (*Chun, supra*, 45 Cal.4th at pp. 1178–1179.) There was evidence that Chun, who later admitted firing a gun from the attacking vehicle, belonged to a rival gang. (*Id.* at p. 1179.)

Overruling *Hansen*, the California Supreme Court held that it was error to instruct on second degree felony murder where the predicate felony was willful discharge of a firearm. (*Chun, supra*, 45 Cal.4th at p. 1201 & fn. 8.) However, the court also decided the error was not prejudicial.

The *Chun* court first noted that the lower court gave sufficient instructions to permit the jury to reach a second degree murder verdict using either the felony-murder rule (predicated on willful discharge) or conscious-disregard-for-life malice. (*Chun, supra*, 45 Cal.4th at pp. 1202–1203.) Thus, "any juror who relied on the felony-murder rule necessarily found that [the] defendant willfully shot at an occupied vehicle. The undisputed evidence showed that the vehicle shot at was occupied by not one but three persons. The three were hit by multiple gunshots fired at close range from three different firearms. No juror could have found that [the] defendant participated in this shooting . . . without also finding that [the] defendant committed an act that is dangerous to life and did so knowing of the danger and with conscious disregard for life—which is a valid theory of malice. In other words, on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice. The error in instructing the jury on felony murder was, by itself, harmless beyond a reasonable doubt." (*Id.* at p. 1205.)

We agree with Lucero that there is a critical distinction between this case and *Chun*. *Chun* involved a typical driveby shooting. There was no evidence supporting perfect or imperfect self-defense on the part of the perpetrators in *Chun*. The difference is important, because here there was testimony that the gunmen were afraid they were going to be fired upon, and the jury was instructed that a killing in the unreasonable belief in the need for self-defense negates malice, reducing the crime to voluntary manslaughter. If the jury accepted Lucero's imperfect self-defense claim, it could not have reached a second degree murder verdict except by taking malice out of the equation, i.e., by using the felony-murder rule. Therefore, we reject the People's argument that, for purposes of analyzing prejudice, this case stands on all fours with *Chun*. Nevertheless, we find the instructional error harmless for other reasons, as we shall explain.

## A. The *Chapman/Sullivan*[5] Test

■ Instructions omitting or misdescribing an element of an offense are subject to harmless error analysis under the test of *Chapman*, as applied in *Sullivan*. (See *People v. Flood* (1998) 18 Cal.4th 470, 503–507 [76 Cal.Rptr.2d 180, 957 P.2d 869].) The essential inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan, supra,* 508 U.S. at p. 279 [124 L.Ed.2d at p. 189]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 194 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) We answer this question in the affirmative.

Our review of the record shows that the felony-murder method of arriving at a murder verdict was given short shrift at trial. The jury was instructed on first degree murder by premeditation or lying in wait, traditional murder of the second degree, i.e., an unpremeditated intentional killing with malice, and attempted murder. The jury was also instructed on both perfect and imperfect self-defense, including the principle that a person who kills in the unreasonable belief in the need for self-defense does not harbor malice.

We acknowledge the jury was told that "[e]very person who unlawfully kills a human being with malice aforethought *or during the commission or attempted commission of a felony inherently dangerous to human life* is guilty of the crime of murder." (Italics added.) However, neither the prosecutor nor any instruction informed the jury that imperfect self-defense was unavailable to rebut a murder charge based on felony murder. On the contrary, as shown below, counsel persistently argued the case as if imperfect self-defense was the pivotal issue for the jury's determination.

The prosecutor went over instructions on the elements of malice and imperfect self-defense. He described the defendants' imperfect self-defense claim as "what I think is the heart of the case, or certainly the heart of the defense case." He even misstated the law *in the defendants' favor* by telling the jury that murder based on either malice *or* on the felony-murder rule would be negated by imperfect self-defense.[6]

The prosecutor launched an all-out attack on the defendants' assertion that they fired their weapons in the honest belief that the unarmed occupants of

---

[5] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; *Sullivan v. Louisiana* (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078] (*Sullivan*).

[6] The prosecutor said, "[i]f there's malice aforethought *or if it was done during the commission of a felony, which it most certainly was here—*it is murder. *Unless it's mitigated by something else and there's only one thing. There's only one thing that you have to—that you can mitigate in this case and that is, were they acting under an honest but unreasonable right* [sic] *to defend themselves?* An actual but unreasonable right." (Italics added.)

the car were about to shoot at the Tabios house. He highlighted the victims' testimony that their car was backing up when it was hit by gunfire, not coming toward the defendants as the defendants claimed. He pointed out that Lucero admittedly lied to the police when he initially told them that he was asleep during the shooting and was awakened by the sound of gunfire. He asserted that the defendants showed consciousness of guilt by hiding their rifles and instructing witnesses not to talk to the police. He also ridiculed the defendants' claims that the victims' car had dimmed its headlights, had its windows rolled down, was "mad-dogging" them and tried to run them over, pointing out that these claims were refuted not only by the physical evidence but by every disinterested witness's account of the incident. Finally, the prosecutor asserted that Lucero's trial testimony—that he pointed his gun up in the air to "scare" the occupants of the car—was irreconcilable with evidence indicating that the bullet from his rifle shattered the car's windshield.

It is true, as Lucero notes, that at one point the prosecutor said that murder based on a killing that occurs as a result of an inherently dangerous act such as willful discharge of a firearm "is probably the easiest conclusion [you can] come to in this trial." However, the prosecutor never suggested to the jurors that the issue of malice would be moot if they followed the felony-murder instruction, nor did he tell them they could dispense with any consideration of imperfect self-defense if they merely found the defendants committed the homicide by intentionally firing their rifles at the car.

The prosecutor's argument was a meticulous and straightforward effort to persuade the jury that the defendants' claim of imperfect self-defense was a complete fabrication, concocted after the shooting. He asked the jury to return a first degree murder verdict on the theory that the killing was not only not mitigated, it was premeditated. He asserted that the defendants saw this as a "perfect opportunity [to] get back at enemies, people that they saw had done them or they felt had done them past wrongs and they're coming down the street at them and now is our chance to get back at them." "These defendants were not innocent victims of some brutal gang out for their blood," stated the prosecutor. "They encouraged it and instigated it and taunted and teased and invited trouble to their doorstep."

Defense counsel built their closing arguments around their clients' perceived need for self-defense based upon the prior driveby shooting by Li'l Unity. In his rebuttal, the prosecutor told the jurors that the defendants' credibility "is on trial" here and the key issue for their consideration was whether Lucero and Tabios held an actual belief in the need for self-defense when they shot at the car.

In sum, although the felony-murder route was available as a shortcut for arriving at a murder verdict, it was virtually ignored in closing arguments to

the jury. The trial was conducted as if the central issue for jury determination was whether the defendants sincerely believed that they were about to be fired upon by members of the Li'l Unity gang. For the jurors to have disregarded this issue and rendered a murder verdict based solely on felony-murder homicide by willful discharge, they would had to have taken a tangled route through the jury instructions that was neither advocated nor suggested.[7]

For these reasons, we find no reasonable possibility the jury rested its verdict of second degree murder on the felony-murder instruction.

## B. The *Chun/Roy*[8] Test

█ Prejudice from erroneous jury instructions may be measured in more than one way. In *Chun*, the state Supreme Court used a variant of the reasonable doubt test for prejudice developed by Justice Scalia in his concurring opinion in *Roy*. As stated in *Chun*, " 'The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding this point as well.' ([*Roy, supra*, 519 U.S.] at p. 7 [136 L.Ed.2d at p. 272] [(conc. opn. of Scalia, J., joined by Ginsburg, J., as to pt. I)].) Without holding that this is the only way to find error harmless, we think this test works well here, and we will use it. *If other aspects of the verdict or the evidence leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice, the erroneous felony-murder instruction was harmless.*" (*Chun, supra*, 45 Cal.4th at pp. 1204–1205, italics added.)

In footnote 2 of *Tabios, supra*, 67 Cal.App.4th at page 9, we concluded that, even if the jury was erroneously instructed on the felony-murder rule, the error was harmless, because, "by returning guilty verdicts on the charges of attempted murder, the jury necessarily found defendants acted with malice. The jury was instructed: 'Every person who attempts to murder another human being is guilty of a violation of Sections 664 and 187 of the Penal Code. [¶] Murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove the crime of Attempted Murder, each of the following elements must be proved: [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being.' In convicting defendants of

---

[7] Although the jury propounded a number of written requests to the trial judge during its deliberations, it asked no questions about the jury instructions.

[8] *Chun, supra*, 45 Cal.4th 1172; *California v. Roy* (1996) 519 U.S. 2 [136 L.Ed.2d 266, 117 S.Ct. 337] (*Roy*).

these charges, the jury found defendants acted with express malice, and necessarily would have resolved the imperfect self-defense claim against defendants even if the jury had been allowed to consider it in relation to the felony murder charge."

 Our observation still holds true, but we add the following further explanation: For the felony-murder rule to apply, there must be a *killing*. (See § 189.) Thus, the rule is inapplicable to attempted murder, as well as aiding and abetting an attempted murder. (*People v. Patterson* (1989) 209 Cal.App.3d 610, 614 [257 Cal.Rptr. 407].) In order to have convicted Lucero of attempted murder, the jury could not have used felony-murder instructions as a substitute for a finding of malice. No juror who correctly followed the instructions could arrive at a verdict of attempted murder without addressing the question of malice aforethought and resolving it against Lucero. Hence, this is a case where "other aspects of the verdict . . . leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice . . . ." (*Chun, supra,* 45 Cal.4th at p. 1205.)

Lucero nevertheless claims that prejudice exists here because the jury was never explicitly told that an honest but unreasonable belief in the need for self-defense would negate malice and thereby reduce the crime of attempted murder to attempted voluntary manslaughter.

The argument is unpersuasive. The jury was told that in order to find Lucero guilty of counts two and three (attempted murder), it had to find that he harbored the required mental state, and that "[u]nless such mental state exists, the crime to which it relates is not committed." Furthermore, under the instructions, in order to be guilty of attempted murder, Lucero had to engage in an ineffectual act *while harboring express malice aforethought*, including specific intent to kill a human being. The court also instructed that "[t]here is no malice aforethought if the killing occurred in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury." Finally, the jurors were told that attempted voluntary manslaughter was a lesser included offense to the charge of attempted murder, and were given verdict forms allowing them to convict the defendants of attempted voluntary manslaughter in lieu of finding them guilty of attempted murder.

 Jurors are presumed to be intelligent people who are capable of understanding and correlating all of the instructions they are given. (*People v. Franco* (2009) 180 Cal.App.4th 713, 720 [103 Cal.Rptr.3d 310].) Based on the instructions given, as well as the arguments of counsel noted above, we find no reasonable possibility that the jury failed to understand that a finding of malice was a prerequisite to a verdict of

attempted murder. The jury's attempted murder verdicts, based as they were on instructions uninfected by the felony-murder rule, demonstrate that the jury made findings of actual malice and rejected the defendants' claims of perfect and imperfect self-defense.

## C. *Conclusion*

Under either of the two tests for prejudice outlined above, we conclude that any error in instructing the jury on felony murder pursuant to *Hansen, supra*, 9 Cal.4th 300, was harmless beyond a reasonable doubt. Accordingly, *Chun, supra*, 45 Cal.4th 1172, even applied retroactively, does not entitle petitioner Lucero to a new trial.

## DISPOSITION

The petition is denied.

Hull, Acting P. J., and Hoch, J., concurred.

A petition for a rehearing was denied November 17, 2011, and petitioner's petition for review by the Supreme Court was denied February 1, 2012, S198444.