BENKE, Acting P. J., Dissenting.
I agree with the majority’s conclusion that, in light of People v. Chun (2009) 45 Cal.4th 1172, 1198-1201 [91 Cal.Rptr.3d 106, 203 P.3d 425] (Chun), the jury in this case should not have been instructed on a theory of felony murder based on Michael Hansen’s alleged violation of Penal Code section 246. I am also willing to accept that Hansen is entitled to the benefit of the new rule set forth in Chun.
What I cannot join is the majority’s determination Hansen was prejudiced by inclusion of a felony-murder instruction. My principal point of departure is the majority’s application of the harmless beyond a reasonable doubt standard of review for prejudice. Although our California Supreme Court has not considered what standard to apply when, as here, we are engaged in collateral review of a final judgment, we should adopt and apply the more deferential “grave doubt” harmless error standard of review, which governs consideration of similar trial errors when found in federal habeas corpus proceedings. (See Chun, supra, 45 Cal.4th at p. 1204.) At the very least, the majority should explain why its harmless error analysis departs from the grave doubt standard adopted by the United States Supreme Court in Brecht v. Abrahamson (1993) 507 U.S. 619 [123 L.Ed.2d 353, 113 S.Ct. 1710] (Brecht) and Kotteakos v. United States (1946) 328 U.S. 750 [90 L.Ed. 1557, 66 S.Ct. 1239] (Kotteakos).
However, even under the stricter reasonable doubt standard, the record here shows Hansen was not prejudiced by the felony-murder theory provided to the jury. As I explain more fully, the undeniable evidence Hansen knew he was acting in a life-threatening manner, and thus with implied malice, eliminates the possibility of any prejudice.
1. Harmless Error
As the majority note, the trial court’s error in giving a felony-murder instruction was subject to harmless error analysis. (See Chun, supra, 45 *930 Cal.4th at p. 1201.) “As the United States Supreme Court has emphasized, ‘ “[t]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant’s guilt or innocence [citation], and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R‘. Traynor, The Riddle of Harmless Error 50 (1970) (Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it’).” ’ (Rose v. Clark [(1986)] 478 U.S. [570,] 577 [92 L.Ed.2d 460, 106 S.Ct. 3101], quoting Delaware v. Van Arsdall (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 106 S.Ct. 1431]; cf. People v. Cahill [(1993)] 5 Cal.4th [478,] 508-509 [20 Cal.Rptr.2d 582, 853 P.2d 1037] [noting similar policies underlying the reversible error rule under the California Constitution].)” (People v. Flood (1998) 18 Cal.4th 470, 507 [76 Cal.Rptr.2d 180, 957 P.2d 869].) Thus, where the record shows an instructional error has nothing to do with a jury’s determination of guilt or innocence, reversing a defendant’s conviction will “erode the purpose and rationale of the harmless error doctrine and promote disrespect for the judicial system.” (Ibid.)
Although it does not appear that our own California Supreme Court has addressed the issue, the United States Supreme Court has made it clear that in federal habeas corpus proceedings, the beyond a reasonable doubt harmless error standard set forth in Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (Chapman) does not apply to trial errors. (See Brecht, supra, 507 U.S. at p. 637; see also O’Neal v. McAninch (1995) 513 U.S. 432, 438-439 [130 L.Ed.2d 947, 115 S.Ct. 992]; California v. Roy (1996) 519 U.S. 2, 5-6 [136 L.Ed.2d 266, 117 S.Ct. 337].)[1] “Overturning final and presumptively correct convictions on collateral review because the State cannot prove that an error is harmless under Chapman undermines the States’ interest in finality and infringes upon their sovereignty over criminal matters. Moreover, granting habeas relief merely because there is a ‘ “reasonable possibility” ’ that trial error contributed to the verdict, [citation], is at odds with the historic meaning of habeas .corpus—to afford relief to those whom society has ‘grievously wronged.’ Retrying defendants whose convictions are set aside also imposes significant ‘social costs,’ including the expenditure of additional time and resources for all the parties involved, the ‘erosion of memory’ and ‘dispersion of witnesses’ that accompany the passage of time and make obtaining convictions on retrial more difficult, and the frustration of ‘society’s interest in the prompt administration of justice.’ [Citation.] And since there is no statute of limitations governing federal habeas, and the only laches recognized is that which affects the State’s ability to defend against the *931 claims raised on habeas, retrials following the grant of habeas relief ordinarily take place much later than do retrials following reversal on direct review, [f] The imbalance of the costs and benefits of applying the Chapman harmless-error standard on collateral review counsels in favor of applying a less onerous standard on habeas review of constitutional error.” (Brecht, at p. 637.)
Rather than the Chapman beyond a reasonable doubt harmless error standard, the United States Supreme Court found that the “ ‘substantial and injurious effect’ ” or “grave doubt” standard, which applies when a federal court is reviewing nonconstitutional errors in criminal cases, is more suited to collateral review. (Brecht, supra, 507 U.S. at pp. 637-638.) This more lenient standard was adopted in Kotteakos, supra, 328 U.S. at page 776 and requires reversal only when a reviewing court finds that an error had substantial influence on the jury’s verdict or “is left in grave doubt” (Kotteakos, at pp. 764—765). Later, in O’Neal v. McAninch, supra, 513 U.S. at page 435, the court provided this amplification of the grave doubt standard: “. . . By ‘grave doubt’ we mean that, in the judge’s mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.”
The record here fully warrants application of the Kotteakos standard. Diane Rosalez was killed in 1991, and Hansen was tried in 1992. Even if Michael Behaves, Martha Almenar, Louis Miranda, Rudolfo Andrade, Alexander - Maycott, and the other witnesses are still alive, time has no doubt faded all their memories of the complicated series of transactions and events that lead to Diane’s death. Thus, retrial here imposes the very social costs and harm to the public’s interest in the prompt administration of justice that convinced the Supreme Court the Kotteakos standard is more appropriate than Chapman in collateral proceedings as a means of determining whether an error is harmless.
2. Analysis
Even if we were reviewing this record on direct appeal and were required to apply the stricter standard of review for prejudice, this record, like the records considered in Chun and In re Lucero (2011) 200 Cal.App.4th 38 [132 Cal.Rptr.3d 499], leaves no reasonable possibility the jury somehow found a violation of Penal Code section 246 but no implied malice.
I begin with the instructions provided to the jury. Those instructions, taken together with Hansen’s conduct, virtually eliminate the possibility the jury could find felony murder without also finding implied malice. The felony-murder instruction the jury was given expressly required the prosecution to prove Hansen committed a crime that was inherently dangerous to human life *932 and further instructed the jury that shooting into an inhabited dwelling is a felony inherently dangerous to human life. The implied malice instruction the jury was given required that the prosecution prove that Hansen intentionally committed an act dangerous to human life with knowledge that it was dangerous and with conscious disregard for human life.[2] The only difference between the instructions was the requirement under the implied malice instruction that the jury find Hansen knew about the dangerousness of his conduct and acted with conscious disregard to human life. (See People v. Patterson (1989) 49 Cal.3d 615, 626 [262 Cal.Rptr. 195, 778 P.2d 549]; see also Chun, supra, 45 Cal.4th at p. 1181.) Thus, in order for Hansen to have been prejudiced by the felony-murder instruction the jury was given, we would have to conclude that one or more of the jurors believed that, although Hansen committed an inherently dangerous felony, he nonetheless did not know that it was dangerous or was unconscious of the threat it posed. I do not believe a juror could make such a finding, where, as here, the crime involved multiple and intentional gunshots into a lighted dwelling. Rather, I believe the record shows that while Hansen may not have intended to kill anyone, he had to be aware that the multiple gunshots he deliberately fired into the Behaves apartment were lethally dangerous and, thus, he was acting with implied malice.
Consideration of the court’s holding in Chun only confirms my conclusion. In finding that violation of Penal Code section 246 merges with any homicide so that felony murder is unavailable, the court in Chun did so because it found that shooting at a vehicle is an “assaultive” felony. (Chun, supra, 45 Cal.4th at p. 1200.) The court in Chun defined an “assaultive” felony as “one that involves a threat of immediate violent injury.” (Ibid.) While it is conceivable that a defendant could commit an assaultive crime, such as shooting into a dwelling or vehicle, and be unaware of its dangerousness, such a state of mind would be very rare. (See, e.g., People v. Taylor (2004) 32 Cal.4th 863, 868 [11 Cal.Rptr.3d 510, 86 P.3d 881].) Indeed, in Chun, the court determined that, because the shooting there involved three victims traveling together in a car and each was hit by a bullet from a different *933 firearm, any felony-murder finding necessarily included a conscious disregard for life malice finding. (Chun, at p. 1205.) The court stated, “on this evidence, no juror could find felony murder without also finding conscious-disregard-for-life malice.” (Ibid.) Here, Hansen approached the apartment with the headlights of his car turned off. A jury could not interpret this fact as anything other than an attempt to avoid detection by anyone in the apartment. Hansen then deliberately fired multiple rounds into the apartment, where lights were still on. Hansen’s stealthy approach did not give Diane or her brother a chance to hide anywhere in the apartment and entirely undermines his contention he did not believe anyone was in the apartment when he began firing. Unlike my colleagues, I find it difficult to believe the jury could find that, on those facts, Hansen was guilty of felony murder without also finding the conscious disregard for life needed for implied malice. Thus, as in Chun, I do not believe there is any possibility the felony-murder instruction prejudiced Hansen.
In sum, I have no doubt—grave, reasonable or otherwise—that Hansen acted with implied malice and that the jury so found. I would reverse the trial court’s order granting Hansen’s petition.
Appellant’s petition for review by the Supreme Court was denied October 1, 2014, S220565. Baxter, 1., and Corrigan, J., were of the opinion that the petition should be granted.

 In People v. Flood, supra, 18 Cal.4th at page 498, our Supreme Court recognized the more lenient standard of review applied in federal habeas corpus proceedings but did not have occasion to apply it in the direct appeal before it.

 The felony-murder and implied malice theories were given to the jury in the following form: “In order to prove such crime, each of the following elements must be proved: a human being was killed, the killing was unlawful, and the killing was done with malice aforethought or occurred during the commission or attempted commission of a felony inherently dangerous to human life. Shooting at an inhabited dwelling is a felony inherently dangerous to human life.
“ ‘Malice’ may be either express or implied. Malice is express when there is manifested an intention unlawfully to kill a human being. Malice is implied when: the killing resultfs] from an intentional act, the natural consequences of the act are dangerous to human life and the act was deliberately performed with knowledge of the danger and with conscious disregard for human life.”