Filed 2/9/22  P. v. Lemeur CA4/1
Opinion following transfer from Supreme Court

OPINION AFTER TRANSFER FROM THE CALIFORNIA SUPREME COURT

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN EUGENE LEMEUR,<br><br>    Defendant and Appellant. | D076846<br><br><br>(Super. Ct. No. SWF026931) |


APPEAL from an order of the Superior Court of Riverside, John D. Molloy, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Meredith S. White and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

Steven Eugene Lemeur was convicted of one count of premeditated attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664), among other offenses. In 2019, he petitioned to vacate his attempted murder conviction and obtain resentencing under section 1170.95. The trial court found section 1170.95 did not apply to his attempted murder conviction and dismissed the resentencing petition. We affirmed the summary dismissal order on the same grounds, and the Supreme Court granted review. (*People v. Lemeur* (Oct. 23, 2020, D076846) [nonpub. opn.].)

While the case was pending review, the Governor signed Senate Bill No. 775 (2020–2021 Reg. Sess.) into law. Senate Bill No. 775 amended section 1170.95 to "[c]larif[y] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same [resentencing] relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1(a).) After Senate Bill No. 775 went into effect, the Supreme Court transferred the case to our court with instructions to vacate our prior decision and reconsider the cause in light of Senate Bill No. 775.

Upon reconsideration, we conclude Lemeur remains ineligible for resentencing under amended section 1170.95. Therefore, we once again affirm the order summarily denying his resentencing petition.

---

[1] Further undesignated statutory references are to the Penal Code.

II

BACKGROUND

A

The following factual background is taken from our opinion in *People v. Lemeur* (Oct. 1, 2012, D060131) [nonpub. opn.].

"Cory Smith and Lisha Blakley were injecting themselves with heroin in the bathroom of the apartment of Aaron King when Lemeur and [codefendant Timothy Aaron] True burst in and attacked Smith. During the attack, True stabbed Smith several times. Smith lost a great deal of blood and was treated at a hospital for five life-threatening stab wounds to the chest.

"Until approximately two months before the stabbing, Smith had been a member of a White supremacist gang. Before the stabbing, Smith also had met members of another White supremacist gang, the COORS[] Family Skins (CFS), through Blakley; he socialized with them, but declined an invitation to join the gang. Smith later learned the CFS 'felt disrespected' by his declination of the invitation, and he 'got[ ] in fights with skinheads' over the matter. Some CFS members also accused Smith of being a 'rat' or a 'snitch' in connection with the police investigation of certain theft offenses that occurred at a house where Smith was residing.

"[¶] . . . [¶]

"The People charged defendants with the willful, deliberate and premeditated attempted murder of Smith (... §§ 187, subd. (a), 189, 664…); burglary (§ 459); and active participation in a criminal street gang (§ 186.22, subd. (a)).

"With respect to the attempted murder and burglary charges, the People alleged defendants committed those offenses for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further and assist criminal conduct by gang members. (§ 186.22, subd. (b).)

"The People alleged True personally used a deadly and dangerous weapon (a knife) in the commission of the attempted

3

murder (§ 12022, subd. (b)(1)), and personally inflicted great bodily injury on Smith in the commission of the attempted murder and the burglary (§ 12022.7, subd. (a)).

"As part of the burglary charge, the People alleged that at the time of the offense, a person other than an accomplice was present in the residence. (§ 667.5, subd. (c)(21).)

"Finally, the People alleged Lemeur had a prior conviction of arson (§ 451, subd. (b)), for which he had served a prison term (§ 667.5, subd. (b)) and which qualified as a prior serious felony (§ 667, subd. (a)) and a strike under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12).

"The jury found defendants guilty of all charges; fixed the degree of burglary as first; and found true all the special allegations against them, except the prior conviction allegations against Lemeur, which the trial court found true in a separate bench trial.

"The court sentenced True to prison for an aggregate [prison] term of 19 years to life…. [¶] The court sentenced Lemeur to an aggregate prison term of 35 years to life."

(*People v. Lemeur, supra*, D060131.)

On direct appeal, our court affirmed the judgments. (*People v. Lemeur, supra*, D060131.) The Supreme Court denied review on January 3, 2013.

B

In 2019, Lemeur filed a petition in the trial court seeking resentencing of his premeditated attempted murder conviction under section 1170.95.

The People responded to the resentencing petition. They argued the court should deny the petition because section 1170.95 applied only to petitioners who were convicted of felony murder or murder under a natural and probable consequences theory—not petitioners like Lemeur, who were convicted of premeditated attempted murder.

4

The court appointed counsel for Lemeur and, with the assistance of counsel, Lemeur filed a reply brief in support of his resentencing petition.

The court held a hearing and summarily denied Lemeur's resentencing petition without issuing an order to show cause. It reasoned Lemeur's conviction did not qualify for relief under section 1170.95.

Lemeur appealed and this court affirmed the order summarily denying his resentencing petition. (*People v. Lemeur, supra*, D076846.) We reasoned summary dismissal was warranted because "section 1170.95 applie[d] only to murder convictions," not attempted murder convictions. (*Ibid.*)

The Supreme Court granted review and deferred further action pending consideration and disposition of a related issue in *People v. Lopez*, S258175. In that case, the Supreme Court granted review to consider, among other issues, whether Senate Bill No. 1437 (2017–2018 Reg. Sess.), the law that implemented section 1170.95, "appl[ied] to attempted murder liability under the natural and probable consequences doctrine …."

C

While the case was pending review, Senate Bill No. 775 was signed into law, effective January 1, 2022. According to the Legislative Counsel's Digest, the Legislature enacted Senate Bill No. 775, among other reasons, to "allow a person who was convicted of … attempted murder under the natural and probable consequences doctrine … to apply to have their sentence vacated and be resentenced if, among other things, the complaint, information, or indictment was filed to allow the prosecution to proceed under a theory of … attempted murder under the natural and probable consequences doctrine." (Legis. Counsel's Dig., Sen. Bill No. 775 (2021–2022 Reg. Sess.).)

Amended section 1170.95 provides as follows: "(a) A person convicted of felony murder or murder under the natural and probable consequences

5

doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."[2]  (§ 1170.95, subd. (a).)

A resentencing petition must include "(A) A declaration by the petitioner that the petitioner is eligible for relief … based on all the requirements of [section 1170.95,] subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel."  (§ 1170.95, subd. (b)(1).)  "If a petition fails to comply with subdivision (b)(1), 'the court may deny the

---

[2]    The changes to sections 188 and 189 "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony murder rule."  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

petition without prejudice to the filing of another petition.' (§ 1170.95, subd. (b)(2).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)

"Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra*, 11 Cal.5th at p. 960.) When deciding whether a petitioner has made a prima facie case, the trial court may rely on the petitioner's record of conviction. (*Id.* at pp. 970–971.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.) Generally, an appellate opinion is "considered to be part of the record of conviction." (*Id.* at p. 972.) A court may also "rely on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings under section 1170.95(c). [Citation.] The jury instructions given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 (*Soto*).)

If the trial court determines a prima facie case for relief has been made, it must issue an order to show cause, and then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

7

III

DISCUSSION

A

After Senate Bill No. 775 went into effect, the Supreme Court transferred the present case back to our court with instructions to vacate our prior decision affirming the summary dismissal of Lemeur's resentencing petition, and to reconsider the cause in light of Senate Bill No. 775.

Lemeur filed a supplemental opening brief, the People filed a supplemental responding brief, and Lemeur filed a supplemental reply brief without obtaining leave of court.

B

There is no dispute that Lemeur's codefendant, True, was the direct perpetrator of the attempted murder. Because he was the direct perpetrator, the jury only could have convicted Lemeur of premeditated attempted murder under one of the following bases of liability: (1) direct aiding and abetting principles; or (2) the natural and probable consequences doctrine.[3]

If the record of conviction shows the jury found Lemeur guilty as a direct aider and abettor, the jury necessarily would have found that he harbored an intent to kill, and Lemeur could not make a prima facie case for relief. (See *People v. Lee* (2003) 31 Cal.4th 613, 624 ["to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as

---

[3] Felony murder principles are not at issue here. "For the felony-murder rule to apply, there must be a *killing*. (See § 189.) Thus, the rule is inapplicable to attempted murder, as well as aiding and abetting an attempted murder." (*In re Lucero* (2011) 200 Cal.App.4th 38, 51.)

an aider and abettor must intend to kill"]; *People v. Beeman* (1984) 35 Cal.3d 547, 560 ["When the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime [citation], the aider and abettor must share the specific intent of the perpetrator."].) However, if the record of conviction fails to show the jury convicted him as a direct aider and abettor, he would be entitled to an order to show cause.

The record of conviction conclusively shows the jury found Lemeur guilty of premediated attempted murder as a direct aider and abettor.  In particular, the jury instructions from Lemeur's criminal trial show the jury received instructions on aiding and abetting (CALJIC 3.01) and accomplice liability (CALJIC 3.10); however, it received no instructions on the natural and probable consequences doctrine.[4]  Based on these instructions, the jury could not have convicted Lemeur under a natural and probable consequences theory of liability.  Therefore, as a matter of law, Lemeur is not entitled to resentencing.  (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 678 [jury instructions showed petitioner was not entitled to resentencing as a matter of law]; *Soto, supra*, 51 Cal.App.5th at p. 1055 [petitioner did not make prima facie showing under section 1170.95 because jury instructions showed he was not convicted of murder under natural and probable consequences doctrine]; accord *People v. Rivera* (2021) 62 Cal.App.5th 217, 236–237 ["The fact that a petitioner was not 'convicted of felony murder or murder under a natural and probable consequences theory' at trial may be conclusively determined if, for example, the jury did not receive instructions on either theory."].)

---

[4]     The People requested judicial notice of the jury instructions from Lemeur's trial, which were part of the appellate record in the direct appeal from Lemeur's conviction.  We grant the request for judicial notice.  (Evid. Code, §§ 452, 459, subd. (a); see *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426 fn. 1 [judicially noticing appellate record from prior appeal].)

Lemeur concedes the jury was not instructed on the natural and probable consequences doctrine.  However, he speculates "the prosecutor may have argued the natural and probable consequences to the jury" during closing arguments.  Further, he postulates the jury "might have asked for clarification on the law applicable to aiding and abetting" during jury deliberations, and the court "might have responded by instructing them on an additional natural and probable consequences theory of liability …."

Even if we reach the merits of Lemeur's arguments—which he raised for the first time in a supplemental reply brief filed without leave of court—they would not change the outcome.  Regardless of whether the prosecution mentioned the natural and probable consequences doctrine during closing arguments—and there is no indication in the record that the prosecution did so—we " 'presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 131.)  As noted, those instructions were limited solely to direct aiding and abetting principles—not the natural and probable consequences doctrine.

Further, Lemeur himself does not even contend that the prosecution argued the natural and probable consequences doctrine to the jury, or that the jury asked the court for clarification on aiding and abetting principles, or that the court responded to a jury note with an instruction on the natural and probable consequences doctrine.  He points to nothing in the record of conviction showing or implying that the jury relied on a natural and probable consequences doctrine.  Instead, he theorizes that the jury might have done so.  In light of the aiding and abetting instructions that were actually given to the jury, we are not persuaded that Lemeur is entitled to an order to show cause based solely on unsupported conjecture.

10

Because the jury instructions show the jury was instructed solely on direct aiding and abetting principles—not the natural and probable consequences doctrine—the record of conviction demonstrates, as a matter of law, that the jury convicted Lemeur as a direct aider and abettor to premediated attempted murder.  For that reason, Lemeur has failed to make a prima facie case for relief under section 1170.95.

IV

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

11