Filed 11/3/25  P. v. Blocker CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>LINNETTE BLOCKER,<br><br>     Defendant and Appellant. | B337847<br><br>(Los Angeles County<br> Super. Ct. No. YA018677) |

APPEAL from an order of the Superior Court of Los Angeles County, Alan B. Honeycutt, Judge.  Affirmed.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General for the Plaintiff and Respondent.

Linnette Blocker appeals from the lower court's denial of his[1] Penal Code section 1172.6[2] resentencing petition. In 1995, a jury convicted Blocker of felony murder and aiding and abetting attempted murder. Blocker was 18 years old at the time. The instant appeal is from Blocker's second resentencing petition concerning these convictions. He filed his first resentencing petition in 2020, which the trial court denied, a decision we affirmed in a 2021 unpublished opinion.

In the instant appeal, Blocker argues he is eligible for resentencing on the murder conviction based on cases postdating his first resentencing petition. These cases expanded the implied malice analysis applicable to felony murder to include consideration of a defendant's youth and maturity. But Blocker has forfeited this argument, because his counsel did not raise it below. We disagree with Blocker that this constituted ineffective assistance of counsel— and that we should therefore consider his youth factor argument— because counsel's failure to raise the argument was not prejudicial. The argument applies only to implied malice murder theories, and in denying his first resentencing petition, the court found Blocker was guilty of murder on a direct aiding and abetting with express malice theory as well. That finding has collateral estoppel effect.

As to his attempted murder conviction, we agree with Blocker that the lower court erred in relying on a felony-murder theory when concluding Blocker was ineligible for sentencing. But this error was harmless because, based on both law of the case and collateral estoppel principles, Blocker could not have disputed

---

[1] Blocker is a transgender male. As do the parties in their briefing, we use male pronouns to identify Blocker.

[2] All further statutory references are to the Penal Code.

earlier findings that the evidence also supports he is guilty of attempted murder as a direct aider and abettor who acted with the intent to kill.

Finally, we conclude Blocker failed to establish that the court improperly relied on the factual summary in a prior appellate opinion, rather than the trial transcripts in evidence, when assessing the facts relevant to Blocker's resentencing petition.

Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Conviction and Direct Appeal*

In 1994, Blocker took part in a burglary in which one of his cohorts killed Tairree Lynne West, and another cohort attempted to kill Ashley L., West's 12-year-old foster child. Blocker was 18 years old at the time. In 1995, a jury convicted [him] of one count of murder (§ 187, subd. (a)), one count of attempted murder (§§ 187, 664), one count of residential burglary (§ 459), and one count of felony child abuse (§ 273d). On the murder count, the jury found true a felony-murder special circumstance allegation. (§ 190.2, subd. (a)(17).) The trial court sentenced Blocker to life in prison without the possibility of parole, plus an additional 10 years 4 months.

In a prior opinion, we described the facts of the case as follows: "T[airree] Lynne West (West) lived in a small apartment in El Segundo with her infant daughter, Carlie, and with 12-year-old Ashley L[.], whom West was adopting. Erica Olsen (Olsen) had lived with West for approximately two months. She left at West's request in late November or early December 1993. Olsen had a key to the apartment. While Olsen was living with West, her boyfriend, Robert Foster (Foster), occasionally visited and spent the night.

3

"Foster and Olsen were living in room 401 of the Hollywood YMCA in early February 199[4]. Marcus Brewington (Brewington) lived in room 414. At approximately 2:30 p.m. on February 8, 1994, Foster asked the YMCA residence director for permission to bring a visitor to his room to discuss business. The director gave permission, after which Foster and Olsen walked toward the rooms with [Blocker]. The desk supervisor saw these three and Brewington leave the YMCA later that night; they walked toward the bus stop. Their demeanor appeared to be uncharacteristically serious; they were all wearing dark clothing and bandannas. [Blocker] was wearing gloves.

"West, the baby and Ashley arrived home at approximately midnight on the night of February 8. After Ashley finished her homework, they retired for the night. The baby, Carlie, was ill with bronchitis and therefore was sleeping with her mother.

"Foster, Olsen, Brewington and [Blocker] had taken a bus to West's apartment, arriving at approximately 11:00 p.m. They waited in a nearby park for approximately one hour until West and the children returned home. As they waited, Foster, Olsen and Brewington discussed entering West's apartment to steal her belongings and then killing the family. Foster, who had a butcher knife, said he would break West's neck. Brewington said he would 'take care of the baby.'

"Shortly after they saw West drive up in her Nissan Pulsar and enter the apartment, the quartet left the park and went to the apartment. Foster used Olsen's key to open the door. As the others entered the apartment, Foster went to West's bedroom. He attacked her with the knife, inflicting a number of stab wounds. She also was struck forcefully 15 to 20 times. She died from strangulation.

4

"Aware that West was struggling for her life, [Blocker] entered the kitchen. Finding Carlie, clad only in a diaper, lying in the sink, [he] picked her up. [Blocker] carried Carlie to the living room; [he] placed the baby on the sofa. At this point, [Blocker] saw Brewington wrestling with Ashley. He called to [Blocker] to come and hold down Ashley. [Blocker] did so briefly. When [he] left the room, Brewington still was struggling with Ashley. According to Ashley, Foster attempted to strangle her, after which Brewington punched her and she passed out.

"As the quartet gathered West's property, they heard Ashley moan. Foster went into Ashley's bedroom briefly. When he emerged, the quartet left with a radio, West's spoon collection, a large number of compact discs, a stereo and West's Nissan Pulsar. They also took a jacket of West's and her pager.

"Ashley regained consciousness some time later. After discovering that her neck was bleeding, she crawled to the telephone and called 911. As she passed West's bedroom, she could see West's legs and a great deal of blood.

"El Segundo Police Officer Louis Kutil found the panic-stricken and terrified Ashley holding a bloody towel to her neck. West was lying on her bed, covered with blood. She had been strangled with a black scarf. There was a broken knife in the bedroom. The living room had been ransacked. Officer Calvin Smith found Carlie lying face down on the living room sofa underneath pillows and towels. She had been gagged with a light blue bandanna; she was extremely cold, pale and tired; her diaper was abnormally saturated.

"Foster, Olsen, Brewington and [Blocker] returned to the YMCA at approximately 2:30 a.m. on February 9, 1994. After cleaning up, they discussed the venture. Foster acknowledged

5

stabbing and choking West.  Brewington said he tried to choke Ashley, but she simply would not succumb; Foster went into her room and slashed her throat.

"[Blocker] initially denied knowing anything about the killing. [He] stated, however, that [he] spent the entire night with Foster. While talking to [Blocker], Detective Bart Langley noticed a pager hanging from [Blocker's] waistband; the pager was West's.  He arrested [Blocker] and Brewington.  Shortly thereafter, Foster and Olsen returned to the YMCA in West's automobile.  Officer Rudy Kerkoff arrested them.  They had pawned most of the property taken from West's apartment.

"**Defense**

"In early February 1994, Thomas Semblower (Semblower) met Foster, Brewington and Olsen at the Teen Canteen.  Foster asked Semblower to help with a burglary in El Segundo; he intended to burglarize a place he and Olsen knew.  They had a key to the apartment.  Semblower's role would be to help restrain the boyfriend; the other participants would be Foster, Brewington, Olsen and [Blocker].  Olsen and [Blocker] would restrain the children.  Semblower agreed to participate in the burglary.

"Semblower met Foster and the others at the YMCA on the following day to discuss the matter further.  Foster took Semblower aside; he said he had changed plans.  Rather than restraining the burglary victims, they would kill them.  [Blocker] was not present when this conversation took place.  Semblower refused to participate under these circumstances."

In 1996, we affirmed Blocker's convictions on direct appeal. (See *People v. Blocker* (Oct. 29, 1996, B099624) [nonpub. opn.] (*Blocker I*).)  We rejected Blocker's argument that "the burglary felony-murder special circumstances must be stricken, in that

6

the burglary was incidental to the plan to kill the occupants of the apartment." In so doing, we held that "[t]here is ample evidence the perpetrators intended to steal West's property, including the automobile, *as well as to kill her and the children*." (Italics added.)

**B.** **_2019 Petition Under Section 1170.95 (First Resentencing Petition)_**

**1.** **Section 1170.95 background**

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), which limited the application of the felony-murder doctrine and abolished the natural and probable consequences doctrine in cases of murder. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) Senate Bill No. 1437 includes both prospective and retrospective provisions. Prospectively, it amends section 188 such that a conviction for felony murder requires proof that the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3); see § 188, subd. (a)(3) ["Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime"].)

The retroactive component of Senate Bill No. 1437 is codified in former section 1170.95[3] (see *Gentile, supra*, 10 Cal.5th at p. 853),

---

[3] As noted below, the Legislature has since amended and renumbered the statute to be section 1172.6. Given that our citations in this section are in the context of describing the petition Blocker made before this amendment, however, we cite

7

which allows a defendant "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition" for resentencing under the new law.  (Former § 1170.95, subd. (a).)  To be eligible for resentencing, a defendant must show that he or she "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective" as a part of Senate Bill No. 1437.  (Former § 1170.95, subd. (a)(3).)

If the trial court determines that the defendant has made a prima facie showing of eligibility, "the court shall issue an order to show cause" (former § 1170.95, subd. (c)) and hold a hearing to determine whether to vacate the murder conviction.  (*Id.*, subd. (d)(1).)  At this final stage of the proceeding, the prosecution has the burden of proving "beyond a reasonable doubt . . . that the petitioner is ineligible for resentencing"—that is, that the petitioner is guilty of murder under current law.  (*Id.*, subd. (d)(3).)

### 2.    Petition

On January 7, 2019, Blocker filed a section 1170.95 resentencing petition, seeking resentencing on his murder and attempted murder convictions.  Blocker acknowledged there was a split of authority as to whether relief was available under section 1170.95 for an attempted murder conviction, but argued the court could and should grant relief as to that conviction, because the court had instructed the jury on the natural and probable consequences doctrine, and the prosecutor had relied in part on this theory during closing argument.  As to the murder conviction, Blocker argued his conduct did not directly aid Foster in killing West.

that statute, rather than the current version, in this portion of our opinion.

8

After an evidentiary hearing, the trial court found that the prosecution had proven that Blocker was ineligible for resentencing because he was guilty of murder under two separate, currently valid theories:  (1) He was a major participant in the burglary and acted with reckless indifference to human life (implied malice felony murder); and (2) Blocker acted as "an aider and abettor with intent to kill both" West and Ashley.  In reaching the latter conclusion, the court relied on the holding in *Blocker I* that Blocker intended to kill both victims.

The court assumed that section 1170.95 authorized relief from attempted murder convictions, but found Blocker was ineligible for such relief, because he had acted with an intent to kill Ashley and directly aided and abetted her attempted murder.

### 3.    Appeal

Blocker appealed the denial of the petition, and this court affirmed "on two grounds.  First, the jury in Blocker's trial found true a felony-murder special circumstance, making [him] ineligible for relief as a matter of law.  Second, even assuming that the special circumstance finding did not disqualify [him]," "there was substantial evidence to support the trial court's finding that Blocker was a major participant in the burglary." (*People v. Blocker* (Aug. 30, 2021, B309642) [non pub opn.] (*Blocker II*).)  Blocker "[did] not contend that the trial court erred by finding that [he] acted with reckless indifference to human life," so the court reached no conclusions on that issue.  (See *Blocker II, supra,* B309642.)

### C.    *2023 Petition Under Section 1172.6 (Second Resentencing Petition)*

Effective January 1, 2022, Senate Bill No. 775 (Stats. 2021, ch. 551) (Senate Bill No. 775) renumbered section 1170.95 as

9

section 1172.6 and expanded the scope of potential relief it authorized by applying Senate Bill No. 1437's ameliorative changes to, inter alia, individuals convicted of attempted murder under a natural and probable consequences theory. (§ 1172.6, subd. (a)(1).)

In April 2023, following the passage of Senate Bill No. 775, Blocker filed in propria persona a resentencing petition under section 1172.6. In it, he argued that his first resentencing petition did not prevent him from again seeking resentencing, because the law had changed since he filed his first petition, both as a result of Senate Bill No. 775 and in other respects. He argued he was entitled to resentencing because, under current law, he was not a major participant in the burglary that resulted in the murder and attempted murder convictions. He also noted that he was "18 years old at the time of the crime" and cited *People v. Harris* (2021) 60 Cal.App.5th 939 (*Harris*), for the proposition that a defendant's " 'youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development' " can render it " 'far from clear that [he] was actually aware "of particular dangers posed by the nature of the crime." ' " (Quoting *Harris*, *supra*, at p. 960.)

The court appointed counsel for Blocker. Appointed counsel filed a brief arguing Blocker had stated a prima facie case for relief on various bases, none of which relied on Blocker's age or maturity level at the time of the crimes. In opposing the second petition, the People relied solely on their response and accompanying exhibits filed in opposition to the first resentencing petition,[4] which includes trial transcripts and the *Blocker I* opinion.

---

[4] The prosecutor stated that "[t]he new petition doesn't necessarily allege anything differently, other than just contesting

10

The court concluded Blocker had established a prima facie case, issued an order to show cause, and scheduled an evidentiary hearing. Blocker's counsel filed an evidentiary hearing brief, arguing the prosecution could not prove Blocker's conduct rendered him a major participant who acted with reckless disregard for human life. Blocker's counsel further argued that Blocker had not sufficiently assisted in the murder or attempted murder, such that he could be convicted as a direct aider and abettor. The People continued to rely solely on their submission opposing the first resentencing petition.

The court held an evidentiary hearing on April 18, 2024. Neither in Blocker's evidentiary hearing brief, nor at the evidentiary hearing, did Blocker argue that his age was a relevant factor in assessing any aspect of his eligibility for resentencing. At the outset of the hearing, the court announced its tentative ruling that "the rule of the case in [the] matter is that the Court of Appeal has previously ruled that defendant Blocker was a major participant in the underlying offense and acted with reckless indifference to human life and, therefore, is not entitled to resentencing." Blocker argued in response that the court was "precluded from considering the appellate court's factual summary." Neither party, nor the court, mentioned Blocker's age or maturity at the time of the crimes. The court denied the petition, stating it was relying "not . . . on the statement of facts" in *Blocker II*, but rather on the decision's "rul[ing] that . . . Blocker was in fact a major

---

the facts. And the People's position is [Senate Bill No.] 775 didn't actually change anything related to this defendant's legal positioning to the fact. [¶] So the People's prior response listed all the facts and listed all of the citations, including all of the exhibits."

11

participant in the underlying offense, and acted with reckless disregard for human life." In using this as the basis for its ruling on the attempted murder conviction, the court noted there was "no factual . . . distinction between the [two] crimes," given the physical and contemporaneous proximity of the two.

Blocker appealed.

## DISCUSSION

### A. *Attempted Murder Conviction*

#### 1. **Felony-Murder Theory**

Blocker argues the court improperly relied on a felony-murder theory of attempted murder in denying his petition, citing the court's statements that, because Blocker had been a major participant who acted with reckless indifference to human life during the burglary, he was ineligible for resentencing on his attempted murder conviction. The People agree, as do we, that this was error. Attempted murder requires a specific intent to kill. (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) Thus, neither felony murder, nor any other type of implied malice, can provide the mens rea attempted murder requires. (See *In re Lucero* (2011) 200 Cal.App.4th 38, 51; *People v. Bland* (2002) 28 Cal.4th 313, 327; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 456.)

For this error to provide a basis for relief on appeal, however, Blocker must also establish that it was prejudicial; that is, he must demonstrate a reasonable probability of a more favorable result, but for the court's erroneous reliance on a felony-murder theory. (*People v. Vance* (2023) 94 Cal.App.5th 706, 716-717 [application of an incorrect legal framework at a section 1172.6 evidentiary hearing subject to harmless error analysis under *People v. Watson*

12

(1956) 46 Cal.2d 818, 836].) We agree with the People that Blocker has not and cannot make such a showing.

Section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).) Thus, "[d]irect aiding and abetting [with intent to kill] remains a valid theory of attempted murder after the enactment of Senate Bill No. 775," and a court is "not required to grant resentencing on [an attempted murder] count" if the evidence supports guilt beyond a reasonable doubt on such a theory. (*Coley, supra*, at p. 548.) The trial court found in denying the first resentencing petition that Blocker was guilty of attempted murder as a direct aider and abettor who acted with the intent to kill. For reasons we explain below, Blocker would have been collaterally estopped from arguing otherwise at his second resentencing petition hearing, so any error in the court's analysis of the attempted murder conviction is harmless.[5]

_____

[5] In his reply brief, Blocker contends the People may not argue collateral estoppel as a basis for affirmance, because the People failed to raise it below. But here, we consider the argument in deciding whether the court's application of a felony-murder theory to Blocker's attempted murder conviction resulted in a denial of his resentencing petition that was erroneous and must be reversed. For the purposes of this analysis, we consider the court's ultimate decision, not its reasoning or the reasons presented to the court in reaching it. Put differently, whether or not the People raised the collateral estoppel argument below, we would affirm the court's denial of resentencing on the attempted murder conviction, because it was the correct outcome under collateral estoppel principles. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [" ' "a ruling or decision, itself correct in law,

13

Courts—including the California Supreme Court— have applied collateral estoppel in the context of section 1172.6 petitions. (See, e.g., *People v. Curiel* (2023) 15 Cal.5th 433, 451 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 715; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1242, fn. 5.) The doctrine prevents a party from challenging an issue previously decided only when several threshold requirements are met. (*Strong, supra*, at p. 716.) Namely, the issue in the current proceeding must be identical to that decided in an earlier proceeding; the issue must have been "actually litigated" and necessarily decided in the earlier proceeding; "the decision in the former proceeding must be final and on the merits"; and the party against whom preclusion is sought must be the same or in privity with the party from the earlier proceeding. (*Ibid.*)

In the first resentencing petition, Blocker argued that he could not be found guilty beyond a reasonable doubt of attempted murder on a theory of direct aiding and abetting with express malice. Following an evidentiary hearing, the court made express findings to the contrary and denied the petition. The court's resolution of the issue was thus on the merits and necessary to the resolution of the proceedings. (See *Curiel, supra*, 15 Cal.5th at p. 452 ["[a]n issue is necessarily decided so long as it was not ' "entirely unnecessary" to the judgment in the initial proceeding' "].) The People were obviously a party to that proceeding, and the court's decision is now final. The court's

_____

will not be disturbed on appeal merely because given for a wrong reason" ' "]; *Green v. Superior Court* (1985) 40 Cal.3d 126, 138 [it is a "settled principle of appellate review that a correct decision of the trial court must be affirmed on appeal even if it is based on erroneous reasoning"].)

finding at the first resentencing petition hearing that Blocker was guilty of attempted murder under a direct aiding and abetting with intent to kill theory thus satisfies the threshold requirements for it to have collateral estoppel effect.

Although subsequent material changes in applicable law can justify making an equitable exception to collateral estoppel, the legal developments Blocker identifies do not support doing so here, because he cannot show that they "would have resulted in a different [conclusion] under the law as it exists today." (*Curiel, supra*, 15 Cal.5th at p. 455.) Rather, the authority he cites requires courts to consider a defendant's youth in assessing whether the defendant acted with reckless indifference to human life for the purposes of assessing implied malice. (See, e.g., *People v. Jimenez* (2024) 103 Cal.App.5th 994, 997 (*Jimenez*) [court's finding on a prior section 1172.6 petition that the defendant had acted with implied malice did not preclude a second section 1172.6 petition based on "significant changes in the law [since the first petition] relating to the culpability of defendants who were young adults in their teens or early 20s at the time of their crimes"]; *Harris, supra*, 60 Cal.App.5th 939, 944, 960-961 [based in part on relevance of defendant's youth and maturity level in the reckless indifference analysis, remanding for an evidentiary hearing on resentencing petition on implied malice felony-murder conviction]; see also *People v. Jones* (2022) 86 Cal.App.5th 1076; *People v. Oliver* (2023) 90 Cal.App.5th 466; *People v. Pittman* (2023) 96 Cal.App.5th 400.) These youth factor cases do not apply to an assessment of whether a defendant assisted an attempted murder and/or acted with the intent to kill. Blocker does not argue that we should expand the current state of the law by applying these cases in other contexts, nor would we find such an argument persuasive. And as to Senate

Bill No. 775's expansion of section 1172.6 to cover attempted murder convictions, the trial court at the hearing on the first resentencing petition explicitly stated that it was assuming this was the case. Thus, there is no equitable basis for ignoring the collateral estoppel effect of the court's ruling.

Accordingly, there is no reasonable probability that, had the court not erroneously relied on a felony-murder theory of attempted murder, the trial court would have concluded Blocker was eligible for resentencing on his attempted murder conviction under section 1172.6. The court previously concluded Blocker was guilty under an alternative theory, valid under current law, and Blocker was collaterally estopped from arguing otherwise.

## 2. Role of *Blocker II* factual summary

Finally, Blocker argues that the court erred by relying on the factual summary in *Blocker II* in its analysis, which section 1172.6 does not permit. "[T]he factual summary in an appellate opinion is not evidence that may be considered at [a] [section 1172.6] evidentiary hearing to determine a petitioner's eligibility for resentencing." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988; § 1172.6, subd. (d)(3) [limiting reliance on prior appellate opinions to "the procedural history of the case"].) But Blocker has failed to provide any basis on which we might conclude that the court relied on that factual summary and not the trial transcripts that were also in evidence. These transcripts amply support the court's factual assertions, and Blocker does not argue to the contrary. Nor has he identified any discrepancy between the factual summary contained in *Blocker II* and the trial transcripts that might suggest the court's reliance on the former as opposed to the latter. (See *People v. Owens* (2022) 78 Cal.App.5th 1015, 1027 ["there is nothing unfavorable to appellant in any hearsay

16

documents that the trial court did not already know from the other admissible evidence"].)  Moreover, after Blocker repeatedly objected that the court could not rely on factual summaries in prior appellate opinions, the court agreed and expressly identified the limited manner in which it was relying on *Blocker II*.  There is thus no basis for concluding that the court relied on *Blocker II*, rather than the trial transcripts, in its assessment of the facts.

### B. *Blocker's Murder Conviction*

Blocker argues the court incorrectly concluded that, under the law of the case doctrine, *Blocker II* prevented Blocker from challenging that he was a major participant in the burglary who acted with reckless indifference to human life.  The law of the case doctrine "prevents parties from seeking appellate reconsideration of an already decided issue in the same case, ' " absent some significant change in circumstances." ' [Citation.]  For the doctrine to apply, the point of law must have been presented and determined by the [appellate] court, the issue must have been necessary to the prior decision, and application of the doctrine must not result in an unjust decision." (*Jimenez, supra,* 103 Cal.App.5th at p. 1006; see *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 374, fn. 6 (*Bryant*).)  "[T]he doctrine does not apply ' "where the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations." ' " (*Jimenez, supra*, at pp. 1006–1007, quoting *People v. Gray* (2005) 37 Cal.4th 168, 197; *People v. Stanley* (1995) 10 Cal.4th 764, 786.)

Blocker again relies on the youth factor cases, decided after *Blocker II*, arguing they constitute such a "significant intervening change in the law." (See *Jimenez, supra*, 103 Cal.App.5th at p. 1007.)  We agree with the People, however, that because Blocker

17

failed to raise any argument based on the youth factor cases at the evidentiary hearing, he has forfeited his right to do so on appeal. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 653; see *People v. Welch* (1993) 5 Cal.4th 228, 237 [courts excuse forfeiture for failure to raise an issue under only extreme circumstances].)

We also disagree with Blocker that we should nevertheless consider the argument because his counsel provided ineffective assistance in failing to raise it below. To prevail on his claim of ineffective assistance, Blocker must show (1) failure to raise the argument fell below an objective standard of reasonableness under prevailing professional norms, and (2) such failure prejudiced him, meaning there is a reasonable probability that, had counsel raised the argument, the court would have ruled differently on his petition. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (2006) 39 Cal.4th 641, 745-746.)[6] Even assuming for the sake of argument that counsel's failure to argue for resentencing based on Blocker's age was objectively unreasonable, the record does not support that any such failure was sufficiently prejudicial for counsel to have rendered ineffective assistance. As previously discussed, the youth factor cases Blocker argues his counsel should have relied on support that a defendant's youth is a relevant factor in assessing implied malice and reckless

---

[6] Blocker did not have a Sixth Amendment right to effective assistance at the evidentiary hearing, but due process affords him this right. (*People v. Foley* (2023) 97 Cal.App.5th 653, 659-660 [after court issues order to show cause and holds section 1172.6, subdivision (d) evidentiary hearing, petitioner has a due process right to effective assistance of counsel as in other postconviction proceedings where order to show cause has issued].)

indifference to human life—not in assessing express malice. (See Discussion part A.1, *ante*.) Under current law, a murder conviction does not require the defendant to have acted with reckless indifference to human life if the defendant instead acted "with the intent to kill" and "aided, abetted, . . . or assisted the actual killer in the commission of murder." (§ 189, subd. (e)(2).) As to the assistance element of such direct aiding and abetting liability, the trial court rejected Blocker's argument in the second resentencing petition that his conduct during the murder was not sufficiently helpful to the actual killer to constitute aiding and abetting, and he does not challenge that conclusion on appeal. As to the requisite mens rea, the issue preclusive effect of the court's earlier finding that Blocker acted with an intent to kill both victims (see Discussion part A.1, *ante*) supports that, whatever arguments Blocker made to defend against a reckless indifference felony-murder theory, the People could have established Blocker was guilty of murder under a direct aiding and abetting with express malice theory.[7] Moreover, *Blocker I* held that Blocker acted

---

[7] As noted *ante*, footnote 5, Blocker argues that we may not rely on collateral estoppel, because the People did not raise it below. But here, we look to collateral estoppel principles in considering what is reasonably probable to have happened, had Blocker's counsel raised the youth factor argument. It is reasonably probable that the People would not have, as actually occurred, relied solely on appellate holdings applicable only to an implied malice theory as providing law of the case. This is because, had Blocker raised the youth factor cases, they would have created a basis for Blocker arguing, as he does on appeal, that the law of the case doctrine should not apply due to significant intervening changes in the law on implied malice. (See *Jimenez, supra*, 103 Cal.App.5th at p. 1006.) It is thus

with the intent to kill both victims. That holding is law of the case, as it was necessary to this court's resolution of Blocker's arguments on direct appeal and it is unaffected by any subsequent changes in controlling law.[8] (See *Bryant, supra*, 60 Cal.4th at p. 374, fn. 6.)

Thus, even if Blocker's counsel had raised and prevailed on the argument that Blocker did not act with reckless disregard (based on his youth or for any other reason), the evidence before the court still would have supported his conviction for West's murder on the theory that he was a direct aider and abettor acting with the intent to kill. Therefore, Blocker cannot show a reasonable likelihood that the court would have reached a result more favorable to Blocker on his second resentencing petition, had Blocker's counsel raised the youth-based arguments he identifies on appeal, and counsel's failure was not ineffective assistance.

---

reasonably probable that the People would have instead or in addition argued that earlier trial court findings applicable to express malice theories had a collateral estoppel effect and rendered Blocker ineligible for resentencing on the murder conviction.

[8] We thus need not address whether the court below was correct that *Blocker II* created law of the case preventing Blocker from arguing he did not act with reckless indifference. We note, however, that reckless indifference was not at issue in *Blocker II*, so the Court of Appeal held only that Blocker had been a major participant in the burglary.

20

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



WEINGART, J.



M. KIM, J.